Riley, Appellee, v. City of Cincinnati, Appellant.

[Cite as Riley v. Cincinnati (1976), 46 Ohio St. 2d 287.]

(No. 75-72—Decided May 26, 1976.)

288.

290

*Messrs. Lindhorst & Dreidame* and *Mr. Leo J. Breslin,* for appellee.

*Mr. Thomas A. Luebbers,* city solicitor, and *Mr. Timothy L. Bouscaren,* for appellant.

CELEBREZZE, J. Appellant presents for its main objection to the judgment of the lower courts the legal question of the applicability of the covenant not to sue as it relates to a party in its position. The city maintains that if there was any duty owing to the appellee by it that it was at best secondary to that of the three defendants dismissed as a result of the execution of said covenant. Reliance upon this covenant by the appellant is misplaced, not only for the reason that the city was not a party to the negotiation, which the following language shows was not completely dispositive of appellee's claim, but also for the reason that the covenant indicates that the city was specifically excluded therein:

"WHEREAS, Turner and Towne have offered to pay Riley the sum of FIFTEEN THOUSAND ($15,000.00) DOLLARS in return for a Covenant Not to Sue Turner and Towne and to cease and desist from prosecution of the aforesaid cause A250281, the receipt of which sum is hereby acknowledged by Riley, and Riley, her successors and assigns does hereby covenant with Turner and Towne, and each of them, and their successors or assigns, that she will not bring, commence, prosecute, maintain or cause or permit to be brought, commenced, prosecuted or maintained any other suit or action, either at law or in equity, in any court in the United States, or in any state thereof, for personal injury, expense or permanent loss arising from the aforesaid event of November 16, 1968, and further covenants to cease and desist from prosecution of the aforesaid

Cause A250281 in the Court of Common Pleas of Hamilton County, Ohio, against Turner and Towne only.

"It is expressly understood and agreed that Riley, for herself or her successors and assigns, does not hereby intend, nor does she hereby discharge, release, or in any way affect any right, demand, claim or cause of action that she may or does have against the city of Cincinnati, and Riley hereby expressly excepts and reserves all rights that she has to make claim or bring, commence, prosecute, [or] maintain any action heretofore begun, including the aforesaid cause A250281 against the city of Cincinnati.

"It is further expressly understood and agreed that the aforesaid amount of FIFTEEN THOUSAND ($15,-000.00) DOLLARS paid to Riley by Turner and Towne is accepted by Riley in consideration of the granting of the covenant herein recited and Riley, by acceptance of said amount, does not acknowledge that said amount constitutes full and complete compensation for her personal injuries, expense and permanent loss sustained on and as a result of the aforesaid event of November 16, 1968, but, on the contrary, such sum represents only partial payment therefor, it being recognized by all parties hereto that Riley has sustained a loss of earnings to the date of this instrument in excess of said amount, has incurred medical expense to the date of this instrument in excess of said amount, will incur a loss of earnings and medical expense in the future and has suffered great physical and mental pain."

Compare this language with that expressed in *Diamond* v. *Davis Bakery* (1966), 8 Ohio St. 2d 38, 40, as follows:

"Now, therefore, in consideration of the payment to Norman Diamond by Warsaw Sausage Company of the said amount of six hundred and fifty dollars ($650) receipt of which is hereby acknowledged, Norman Diamond does hereby covenant with the said Warsaw Sausage Company, its successors or assigns, that he shall cease and desist from suing or prosecuting the Warsaw Sausage Company for any claim for personal injuries sustained by Norman Diamond arising out of the accident which happened on August 26,

1958. Further, Norman Diamond does not hereby intend to discharge, release, or in any way affect any right, demand, claim or cause of action that he, his executors, administrators or assigns, may or do have against The Davis Bakery, who sold the salami which was manufactured by Warsaw Sausage Company, and he hereby expressly excepts and reserves his full rights to sue The Davis Bakery, and it is understood that the said amount of six hundred and fifty dollars ($650) paid to Norman Diamond by Warsaw Sausage Company is accepted by Norman Diamond in consideration of the granting of the covenant herein recited in favor of Warsaw Sausage Company, and Norman Diamond, by the acceptance of said amount, does not acknowledge that said amount constitutes full and complete compensation for the injuries he sustained, but on the contrary says that it represents only partial payment therefor.

"Further, this instrument is not to be interpreted as being any admission on the part of Warsaw Sausage Company of any liability whatsoever for any injuries sustained by Norman Diamond, which occurred on or about August 26, 1958, when he was eating some salami purchased from The Davis Bakery and manufactured by Warsaw Sausage Company."

From a casual reading of both excerpts one might conclude that the covenant herein was penned with an eye on the *Diamond* agreement, and only the names of the principals changed.

Appellant contends that since the cause of action in the *Diamond* case sounded in "products liability," it should be distinguished from the instant case. We do not agree. The legal relationship sought to be construed is that of the parties to a contract. "A covenant not to sue is nothing more or less than a contract and should be so construed." *Diamond*, at page 42. The parties to the covenant in that case were the injured plaintiff and the Warsaw Sausage Company, which supplied the salami to Davis Bakery, Inc., thus making Warsaw primarily liable for the quality and purity of that food. There is no dispute in the instant cause

that the parties to the covenant were the injured plaintiff and the abutting property owners, who were primarily liable for the safety of those using the public sidwalk on their land. So, within the framework of the covenant not to sue the relationship of the parties in both cases is identical. However, appellant maintains that the decisions of this court in the cases of *Herron* v. *Youngstown* (1940), 136 Ohio St. 190, and *Hillyer* v. *Cleveland* (1951), 155 Ohio St. 552, are more directly on point and therefore compel a reversal of the court below. A review of those cases is consequently in order.

The *Herron* case arose out of a fall precipitated when the handle of a steel trapdoor in a sidewalk protruded as the trapdoor bent under the weight of plaintiff's foot. Suit was instituted against the owners and lessees of the abutting property. Prior to trial Herron entered into a written contract with the lessees "whereby, in consideration of $900 paid to him by them, he acknowledged full satisfaction from them and released and discharged them from all liability on account of his injuries, and covenanted not to sue them or prosecute any pending action to which they were parties for or on account of his injuries." He then expressly reserved his "rights and causes of action" against the owner and the city of Youngstown. The suit against the owner resulted in a verdict and judgment for the owner. The separate suit against the city resulted in a directed verdict for the city. This court, Hart, J., writing, held at page 198, that the "settlement made by the plaintiff with the lessees, and his *full release of claim* against them on account of such injuries in consideration of the sum of $900 exonerated the city of Youngstown." (Emphasis added.) In discussing the legal relationship between the owner, lessees, the city and the plaintiff, that court expressed a fear that should the city be obliged to respond in damages, under the circumstances, its right of subrogation against the lessees would have been absolved. The court then stressed the language employed wherein *Herron* had expressed a *full satisfaction* of the lessees and had

released them from all claims and concluded that the "settlement" would operate as a defense in favor of the city.

The court, in construing the language of the "settlement" and in interpreting the intention of the parties thereto, apparently felt that the plaintiff had given a full release, and since the full release was given to the party primarily liable it foreclosed the plaintiff from proceeding against any others whose liability was more remote.

The *Hillyer* case consisted of a sidewalk fall wherein the abutting property owner, Shell Oil Company, paid $3,437.63 in return for a "Release and Covenant Not to Sue" from the plaintiffs. Pertinent language of that document includes:

"* * * do hereby remise, release and forever discharge Shell Oil Company [,] their agents, and servants, and all other persons, firms, and corporations whomsoever of and from any and all actions, claims, and demands whatsoever * * *.

"* * * That the above mentioned sum is received by claimants in full settlement and satisfaction of all the aforesaid claims and demands whatsoever * * *."

The Hillyers then reserved their rights to proceed against the city of East Cleveland, having stated that they were not fully compensated for their claim—an allegation that was contradictory of the previous statement. A verdict of $8,000 resulted upon trial, and the Court of Appeals ordered a remittitur of the amount paid by Shell. Stewart, J., for this court, reversed that decision under the authority of *Herron, supra*. The Hillyers attempted to circumvent the *Herron* case by stating that there was "no legal responsibility upon the part of Shell" so there could be no question of primary and secondary liability. Judge Stewart, at page 566, disposed of this dubious attempt at circumspection with the following:

"Under such circumstances, we are of the opinion that although Shell did not acknowledge liability by compromising the claim of plaintiff against it, plaintiff is precluded

from denying that she, in good faith, had a valid claim against Shell.''

So, although an attempt was made by the Hillyers to avoid the obvious conclusion stated in *Herron*, the failure to restrict the terms of the agreement of ''settlement'' in the manner of the *Diamond* covenant, which, as has been stated, is almost identical to that in the instant case, proved to be the crucial area of resolution in both those cases.

We are unable to conclude, as appellant asserts, that the instant case is distinguishable from *Diamond* because it does not involve products liability. We are persuaded that the document in question is a contract, and that its intent is to be determined by the language employed therein by the parties. The written expression of the intention of the parties herein discloses three factors: (1) it clearly stated that the consideration to be paid was only a partial compensation for the injury received, acknowledging that she had suffered damages in excess thereof, (2) it nowhere, ''released'' any one but promised only to ''cease and desist from prosecution'' of its present action ''against Turner and Towne only,'' and (3) it expressly excepted and reserved all rights the appellee had against the city of Cincinnati.

Appellant maintains that the trial court erred in refusing to allow it to file an amended answer pursuant to Civ. R. 15(A) and (E), raising a new affirmative defense of accord and satisfaction which it says is the result of the aforesaid covenant. It is true that in construing the language contained in Federal Rule of Civ. Procedure 15(a), which is substantially identical to the Ohio rule, the Supreme Court of the United States, in *Foman* v. *Davis* (1962), 371 U. S. 178, 182, stated:

''If the underlying facts or circumstances relied upon * * * may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.'' Unfortunately this court long ago decided that the matter contained in the aforesaid covenant was not such as would

constitute the affirmative defense of accord and satisfaction.

Judge Wanamaker, in *Adams Express Co. v. Beckwith* (1919), 100 Ohio St. 348, stated in paragraph four of the syllabus:

"Such written release, whether it be a covenant not to sue, a covenant to cease suing, or a covenant in partial satisfaction, does not inure to the benefit of any other persons than those who are parties to such written release, save and except that it is a satisfaction *pro tanto* to the party wronged and to that extent works a discharge to all joint wrongdoers." This language was approved and followed in *Bacik v. Weaver* (1962), 173 Ohio St. 214, and appears in *Diamond, supra* (8 Ohio St. 2d at 44).

And while Civ. R. 15(E) may confer upon a party the right "to serve a supplemental pleading setting forth transactions of occurrences or events which have happened since the date of the pleading sought to be supplemented," it most certainly does not imply implanting defenses which may not be cultivated by evidence upon trial.

Appellant complains further that the trial court erred in striking the affirmative defenses of contributory negligence and assumption of risk from the consideration of the jury. Appellant argues that one using a sidewalk which ordinary and reasonable care would inform him was dangerous takes the risk of such injuries as may result to him by open and apparent defects, which his observation ought to have detected and avoided. Where the unsafe condition of the sidewalk is the presence of ice, as in *Grossnickle v. Germantown* (1965), 3 Ohio St. 2d 96, it may be safely argued that an issue is presented for jury determination. However, there is no evidence in this case that the hole was visible: rather, the contrary is overwhelmingly conclusive. The hole was filed with water and was concealed until the appellee stepped into it. And while one may argue that the visibility of the hole encountered is only one of the circumstances that might reflect upon whether the appellee was exercising due care for her safety, there is nothing in the record to indicate that her conduct in any way would sup-

port the submission of contributory negligence to the jury. Nor does the appellant assert any such conduct, only stating that appellee knew she was in the area of a construction site. We do not think that a public sidewalk abutting a construction site should present an apparition of a mine field where one might be obliged to employ a path seeking device or a guide. This court has held that where the issue of contributory negligence is not supported by the evidence nor raised by the pleadings, a trial court may not charge on that subject. See *Cincinnati Traction Co.* v. *Forrest* (1905), 73 Ohio St. 1.

In *Ricks* v. *Jackson* (1959), 169 Ohio St. 254, 255, the following statement appears:

"In the absence of evidence that a person knew of a danger or that the danger was so obvious that he must be taken to have known of it, it cannot be held that such person assumed the risk of injury from such danger." Judge Stewart expressed it another but equally cogent way in *Morris* v. *Cleveland Hockey Club* (1952), 157 Ohio St. 225, 240: "Assumption of risk is a matter of knowledge of a danger and intelligent acquiescence in it, and to the extent that this can be found recovery will be denied * * *." The fact pattern in the record before us is completely devoid of any knowledge of danger or willingness to accept it by the appellee in this case. The trial court properly concluded that the absence of evidence to support either contributory negligence or assumption of risk would preclude a charge to the jury thereon.

Finally, appellant claims the trial court erred in refusing to submit four of eleven interrogatories to the jury. (Actually the trial court refused to submit eight, however the appellant assigns only four as error.) Civ. R. 49 provides for only one form of verdict—the general verdict. It specifically abolishes the "special verdict" which, formerly, was submitted to Ohio juries together with the interrogatories in conjunction with the special verdict form. With respect to the further use of interrogatories, Civ. R. 49(B) provides:

"The court shall submit written interrogatories to the

jury, together with appropriate forms for a general verdict, upon request of any party prior to the commencement of argument. Counsel shall submit the proposed interrogatories to the court and to opposing counsel at such time, but the interrogatories shall be submitted to the jury in the form that the court approves. The interrogatories may be directed to one or more determinative issues whether issues of fact or mixed issues of fact and law." It is to be noted that the interrogatories must be directed to determinative issues, hence it is incumbent that the interrogatory be so drawn as to test the jury's thinking in resolving an ultimate issue so as not to conflict with its verdict. Appellant proposes that the trial court must submit interrogatories in any form whatsoever so long as they satisfy the above condition. This court in *Ragone v. Vitali & Baltrami, Jr., Inc.* (1975), 42 Ohio St. 2d 161, clarified this proposition, at page 165, by stating:

"The wording of Civ. R. 49(B), that the 'court *shall* submit written interrogatories * * * upon request of any party,' is mandatory in character and leaves no discretion in the trial court on the question of submission, upon request, of proper interrogatories to the jury. The rule, however, reposes discretion in the court to pass upon the content of requested interrogatories as they 'shall be submitted to the jury in the form that the court approves.' "

The four interrogatories the trial court failed to submit are these:

"1. Do you find that a defect existing in the sidewalk at or near 113 East Fifth Street on November 16, 1968 caused plaintiff-appellee to fall?

"2. Did the employees of the Cincinnati Building Department, Mr. Havercamp and Mr. Hodges have charge of matters pertaining to [the] sidewalk at or near 113 East Fifth Street before November 16, 1968?

"3. Did the Sidewalk Division of the Engineering Department of the city of Cincinnati know there was a defect in the sidewalk at or near 113 East Fifth Street before November 16, 1968?

"4. Did the Highway Maintenance Department of the

city of Cincinnati know there was a defect in the sidewalk at or near 113 East Fifth Street on or before November 16, 1968?"

Interrogatories Nos. 3 and 4 were properly denied by the trial court because they incorrectly state the law. In order to impose liability on the city under the statute herein applicable (R. C. 723.01), the appellee must prove either *actual* or *constructive* notice concerning the defect which caused her injury. Only the issue of "actual" notice is presented for resolution in these two interrogatories. Consequently, each interrogatory is incomplete, confusing, and potentially prejudicial to the appellee. The law in Ohio is that constructive as well as actual knowledge of a defect will support a finding of liability. See *Anaple* v. *Standard Oil* (1955), 162 Ohio St. 537; *Boles* v. *Montgomery Ward & Co.* (1950), 153 Ohio St. 381; *Bello* v. *Cleveland* (1922), 106 Ohio St. 94.

The second interrogatory relating to the city employees being in "charge of matters" pertaining to sidewalks was properly refused as being ambiguous in light of the evidence. The record discloses that both of the gentlemen were only regular employees reporting to superior officers, and neither had any specific authority to regulate conditions or to make ultimate decisions. Mr. Havercamp, one of those employees, testified:

"Q. You weren't concerned about the sidewalk; is that right?

"A. That's right, because there was an inspector on the construction.

"Q. And that would be his responsibility; is that correct?

"A. Yes, sir.

"Q. That would be Mr. Hodges; is that his name?

"A. Mr. Hodges."

The determinative issue is not who had "charge" but whether or not the city possessed actual notice, or could be charged with constructive notice of the existence of the hole.

The first interrogatory, pertaining to causation, was adequately submitted to the jury in the following form:

"Did the city of Cincinnati or its agents actively create the defect at or near 113 East 5th Street?"

In the context of this interrogatory the words "actively create" can reasonably be equated with the word "caused" in the question refused by the court. Thus, to that extent, this interrogatory would be redundant or merely cumulative and, as such, the trial court's refusal to submit same to the jury did not rise to the level of an abuse of discretion as set forth in *Ragone, supra.*

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, CORRIGAN and W. BROWN, JJ., concur.

STERN and P. BROWN, JJ., dissent for the reasons stated by Chief Justice TAFT in his dissenting opinion in *Diamond* v. *Davis Bakery, Inc.* (1966), 8 Ohio St. 2d 38, at 45.