Defendant Lehman Awning Company appeals a judgment of the Court of Common Pleas of Stark County, Ohio, entered on a jury verdict finding defendant was liable to plaintiffs Charles and Shelley Catalfamo for personal injuries suffered by Charles Catalfamo while using a truck tarping system appellant provided to appellee's employer. Appellant assigns three errors to the trial court:
ASSIGNMENTS OF ERROR
 ASSIGNMENT OF ERROR NO. 1
 DENIAL OF LEHMAN AWNING COMPANY'S MOTIONS FOR NEW TRIAL, JUDGMENT NOTWITHSTANDING THE VERDICT, DIRECTED VERDICT AND SUMMARY JUDGMENT CONSTITUTES REVERSIBLE ERROR BECAUSE PLAINTIFFS FAILED TO PROVE A DESIGN DEFECT AND ADMITTED THERE WAS NOT ONE.
 ASSIGNMENT OF ERROR NO. 2
 DENIAL OF LEHMAN AWNING COMPANY'S MOTIONS FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR NEW TRIAL CONSTITUTES REVERSIBLE ERROR BECAUSE THE TRIAL COURT FAILED TO INSTRUCT THE JURY ON INTERVENING CAUSE WHERE A THIRD PARTY CREATED THE RISK OF HARM.
 ASSIGNMENT OF ERROR NO. 3
 DENIAL OF LEHMAN AWNING COMPANY'S MOTIONS FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR NEW TRIAL CONSTITUTES REVERSIBLE ERROR BECAUSE THE JURY'S INTERROGATORY ANSWERS WERE INCONSISTENT WITH THE GENERAL VERDICT.
The record indicates on September 20, 1994, appellee's employer, Claire Hughes Trucking Company, Inc., purchased a custom-made tarp to cover the bed of its stake-body truck used to deliver and pick up goods from Hughes' customers. Claire Hughes, a consultant with Hughes Trucking, took the truck to appellant's manufacturing plant to have the tarp fitted to the truck. Hughes asked appellant to fabricate a tarp to come down and completely cover the bed of the truck to keep weather out. Mr. Hughes and his wife waited while the tarp was fabricated. Ms. Hughes recalled they waited "a good bit of the day."
At trial, Mike Scharboude, one of appellant's employees, testified he fabricated the tarp in question. He testified it took approximately five hours to complete the tarp. This involved measuring and fitting the tarp, then hemming it and putting metal eyelets or grommets in the tarp to secure it to the truck. Scharboude testified that in 1994, appellant's standard practice was to secure tarps with either rubber cords or rope. If rubber cords were used, appellant commonly welded binding hooks to the body of the truck to secure the rubber straps. Appellant's practice at the time was to put "S" hooks on the straps through the grommet holes and then crimp the hooks to the straps.
Scharboude also testified there were a number of ways the tarps could be secured to trucks. He testified alternatives to rubber straps included ropes and nylon webbing, used either with or without a racheting system of securement.
After Scharboude finished and fitted the tarp, he informed Mr. and Mrs. Hughes he would have to weld the metal binding hooks to the truck frame. Scharboude testified it would involve more time, plus the additional expense of the materials and labor. It was undisputed Mr. and Mrs. Hughes did not wish to wait for appellant to install the securement system for the tarp. Instead, Hughes indicated his company would be able to attach a securing system to the truck body at a later time. Nonetheless, Scharboude placed the tarp on the truck; and decided on the method of securing it to the truck. Scharboude testified he chose to use straps as the securing system for the tarp because it was appellant's common practice. Straps are faster and more convenient than ordinary rope. Scharboude testified he secured the tarp with straps wherever he could safely hook them to the truck. Not all the grommets were equipped with a strap because there was not always a safe place to attach the strap. Scharboude testified after he had secured the tarp, it would not have blown off, but when the truck left appellant's lot, there was not a secure way to hook the straps. Scharboude admitted it was foreseeable that Hughes would not follow through with attaching the binding hooks to the body of truck, and also foreseeable that a person could be injured if he used the truck in the condition it was in when it left appellant's lot. On the way from appellant's lot, to Hughes Trucking office, the tarp flapped in the wind and did not seem to be secure. Mr. and Mrs. Hughes left the truck at Hughes Trucking Company.
The next morning, Hughes Trucking instructed appellee to take the truck and make some deliveries to customers. When appellee took the truck, there was a strap attached to every grommet on the tarp. No evidence was presented as to who attached the additional straps to the grommets. Appellee made two deliveries before his injury, but did not have occasion to unhook or re-hook the tarp on those deliveries. On the third delivery, appellee successfully unhooked the tarp, but when reattaching the tarp for the first time, the strap slipped from his hand, recoiled, and struck him in the eye, causing permanent damage. Appellee testified he had to get down on his "haunches" in order to see where to hook the strap onto the truck frame. This put his face in a position of danger as he stretched the rubber strap on the tarp.
The trial court gave the jury several interrogatories to complete after it rendered its verdict. The jury found appellant's design of the tarp included the system of attaching it to the truck. The jury found appellant did not sell the particular strap that injured appellee. The jury found appellee's conduct at the time of his accident was reasonably foreseeable to appellant, because appellee was using the product in a manner that would be considered its normal use. The jury found by special interrogatory appellant sold the product with a defective design because it had an unsafe attachment system, which existed at the time it left appellant's control. The jury found the design defect was a direct and proximate cause of the appellee's injury.
 I
Appellant challenged appellees' allegation the product appellant designed was defective in a number of ways. Appellants filed a motion for summary judgment, a motion for directed verdict, a motion for a new trial, and a motion for a judgment withstanding the verdict. The court overruled each motion. The basis of each of these motions was appellant's assertion that appellee had failed to prove the product appellant produced had a design defect, and therefore, appellant was entitled to a judgment as a matter of law.
R.C. 2307.74 provides:
Products defective in manufacture or construction
 A product is defective in manufacture or construction if, when it left the control of its manufacturer, it deviated in a material way from the design specifications, formula, or performance standards of the manufacturer, or from otherwise identical units manufactured to the same design specifications, formula, or performance standards. A product may be defective in manufacture or construction as described in this section even though its manufacturer exercised all possible care in its manufacture or construction.
R.C. 2307.75 provides in pertinent part:
 Products defective in design or formulation; foreseeable risks; benefits; drug or medical device.
 (A) Subject to divisions (D),(E), and (F) of this section, a product is defective in design or formulation if either of the following applies;
* * *
 (1) When it left the control of its manufacturer, the foreseeable risks associated with its design or formulation as determined pursuant to division (B) of this section exceeded the benefits associated with that design or formulation as determined pursuant to division (C) of this section;
* * *
 (B) The foreseeable risks associated with the design or formulation of a product shall be determined by considering factors including, but not limited to, the following:
* * *
 (3) The likelihood that that design or formulation would cause harm in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product;
* * *
 (C) The benefits associated with the design or formulation of a product shall be determined by considering factors including, but not limited to, the following:
* * *
 (2) The technical and economic feasibility, when the product left the control of its manufacturer, of using an alternative design or formulation;
Appellant asserts there was no evidence presented it designed the means to secure the tarp to the truck, but rather, the evidence showed the intended design was not used because Hughes neglected to implement it. In addition, the jury found appellant did not sell the particular strap which struck appellee's eye, and appellant urges this demonstrates it did not design and provide the securement system.
Appellee replies the appellant produced a truck tarp whose design required the user to place tension on an elastic strap in order to secure the tarp to the truck's frame. In the foreseeable event the strap slipped, the design of the tarp provided for the hook on the end of the elastic strap to snap back at the user. The jury found the product appellant produced included both the tarp and its securing system.
In closing, appellee's counsel admitted appellant's anticipated attachment system design was not defective, and appellant asserts the attachment system it designed was not the one used.
We have reviewed the record, and we find sufficient evidence to support the finding that appellant had a duty to provide a design which was safe when it left appellant's control. There was evidence presented to the jury that appellant customarily used this securement design, but could have offered an alternative system. Appellant actually attached the tarp to the truck for Mr. Hughes, using the dangerous securement system. Appellant acknowledged it was foreseeable Hughes would not finish implementing the security system, and that as a result, someone would be injured in exactly the manner plaintiff actually was injured.
We find there was sufficient evidence presented that appellant designed the tarp and the system to secure it, and thus, the trial court's rulings on the various motions were proper.
The first assignment of error is overruled.
 II
In his second assignment of error, appellant urges the court should have given the jury an instruction on intervening cause when a third party, namely, Hughes Trucking, created the risk of harm to appellee.
In Queen City Terminal v. General American TransportationCorp. (1995), 73 Ohio St.3d 609, the Ohio Supreme Court explained the affirmative defense of intervening cause. The Supreme Court noted the causal connection between a defendant's act or omission and the damage or injury occasioned may be broken by an intervening event, Queen City at 69, citing R. H.Massey Company v. Otis Elevator Company (1990), 51 Ohio St.3d 108. However, an intervening cause is not present if the alleged intervening cause was reasonably foreseeable by the one who is guilty of the negligence, Id., citing Neff LumberCompany v. First National Bank of St. Clairsville (1930),122 Ohio St. 302.
The Queen City court noted an intervening cause is foreseeable to the original negligent actor if the original and successive acts may be joined together as a whole, linking each of the actors to the liability. By contrast, the original negligence is excused if there is a new or independent act which intervenes and breaks the causal connection. The term "new" means the second act could not reasonably have been foreseen by the original actor, Queen City at 69.
Here, appellant maintains Hughes Trucking's failure to attach the hooks was a new and independent act, which intervened and broke the causal connection between appellant's production of the tarp and appellee's injury. We do not agree.
Appellant conceded at the time the product left appellant's lot, it was foreseeable that Hughes Trucking would not weld attaching hooks to the truck, and it was foreseeable appellee would be injured. Thus, Hughes Trucking's act is not a new and independent act, but rather is part of the chain of events begun by appellant, culminating in appellee's injury.
Here, appellant fabricated the tarp and placed grommets at regular intervals. Appellant placed straps in some of the grommets, but not in all. Appellant attached the tarp and straps to the truck. Appellant failed to submit a special interrogatory to the jury regarding whether it was foreseeable someone would attach other straps to the empty grommets, in an attempt to secure them to the truck.
Appellant proposed a jury instruction on the affirmative defense of intervening causation, but the trial court did not submit it. A court should only give a jury instruction if the evidence warrants it, see Riley v. Cincinnati (1976), 46 Ohio St.2d 287,297. The trial court instructed the jury there could be more than one proximate cause which produces an injury. The court instructed the jury if it found appellee's injuries were a direct result of misuse of the product in an unforeseeable manner, then appellee could not recover. The court also instructed the jury a substantial or material alteration of the product once it leaves the manufacture's control is a complete defense to any product liability case if the alterations were causally related to the injury. Thus, the jury could reasonably have found Hughes Trucking's actions amounted to a substantial alteration or misuse of the product. However, reasonable minds could not differ on the issue of whether Hughes Trucking actions were new and independent acts because the evidence was undisputed in that regard. The acts of which appellant complains did not break the causal connection between the defects in appellant's product and appellee's injury. Rather, the defect in the securing system, coupled with Hughes' foreseeable subsequent failure to finish attaching the securing system of the tarp, are part of a straight chain of causation which resulted in appellee's injury. Reasonable minds could not find otherwise, on the evidence presented, and the court properly refused to give the instruction on intervening cause. The trial court correctly gave only instructions on material alteration and misuse.
The second assignment of error is overruled.
 III
Finally, appellant argues the jury's interrogatory answers were inconsistent with the general verdict, and hence the court should have sustained its motion for judgment not withstanding the verdict or for a new trial. The interrogatories to which appellant refers to in this assignment of error are additional interrogatory number one which asked ". . . do you find Lehman Awning's design of the tarp included the system of attaching it to the truck being used by the plaintiff on the day of his accident?" The jury answered this interrogatory "yes". The second additional interrogatory to the jury asked ". . . do you find that Lehman Awning sold to the plaintiff employer the particular strap that injured the plaintiff?" To this, the jury answered "no". Appellant argues these two interrogatories are inconsistent with each other and with the general verdict in favor of appellee. Pursuant to Civ. R. 49, the court may enter judgment notwithstanding the verdict if the jury interrogatory answers are inconsistent with the verdict.
Appellant argues because the jury found the strap that injured appellee was not supplied by appellant, the jury's conclusion that appellant designed the method of securing that strap to the frame is illogical and incorrect. Instead, appellant argues the only conclusion to be drawn was that Hughes Trucking provided the strap that injured appellee.
Appellee responds the jury's answers to the interrogatories are not in conflict with the general verdict. In Welch Sand Gravel, Inc., v. O K Trojan, Inc. (1995), 107 Ohio App.3d 218, the court found a manufacturer can be held liable if the design is altered by modifications that are reasonably foreseeable.
Here, appellant's employee fabricated the tarp, and put twenty four grommets on the tarp. After appellant's employee discovered Hughes Trucking was not willing to wait for him to complete the installation of the tarp and securement system, he nevertheless provided some straps to attach to some of the grommets. The evidence showed someone must have added more elastic straps to the tarp in the same fashion in which appellant did, to the empty grommets which appellant had installed. The jury found this was not a material alteration of the design.
Appellant did not test the jury's verdict by means of an interrogatory designed to determine whether it found this particular strap was more likely to cause harm than the ones appellant had furnished, although there was some testimony presented to that effect. We find the jury's answers to the interrogatories are not internally inconsistent, nor are they inconsistent with the general verdict in favor of plaintiff.
The third assignment of error is overruled.
For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.
By Gwin, P.J., Hoffman, J., and Reader, V. J., concur.
---------------------------
---------------------------
 --------------------------- JUDGES
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed. Costs to appellant.
---------------------------
---------------------------
 --------------------------- JUDGES