[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY.
{¶ 1} This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3(A).
{¶ 2} Defendant-appellant Scott Sayre, DDS, appeals from the judgment entered against him in the amount of $533,017 following a jury trial in a dental malpractice action brought by plaintiffs-appellants Veda and Odious McWhorter. In a single assignment of error, he asserts that the trial court erred by failing to instruct the jury on comparative negligence.[1] For the following reasons, we affirm the judgment of the trial court.
{¶ 3} Veda and Odious McWhorter sued Dr. Sayre for negligence and loss of consortium, in addition to asserting other claims not relevant to this appeal. The complaint alleged that Dr. Sayre had negligently inserted dental implants into Veda's lower jaw and that this alleged negligence had proximately caused permanent damage to her alveolar nerve. Dr. Sayre contended that it was Veda's negligence in failing to "heed his professional advice," by failing to return for a follow-up procedure within six weeks of the initial surgery, that had proximately caused her permanent nerve damage. Dr. Sayre now maintains that the evidence of Veda's delay in returning for a second procedure warranted a jury instruction on comparative negligence. We disagree.
{¶ 4} The trial court must provide a jury with instructions that are a correct and complete statement of the applicable law.[2] It must not instruct the jury on a given issue where there is no evidence to support that issue.[3] Accordingly, a reviewing court "should determine whether the record contains evidence from which reasonable minds might have reached the conclusions sought by the instruction."[4]
{¶ 5} The record transmitted for our review convinces us that there was no evidence from which reasonable minds could have concluded that Veda's own negligence had caused her injury. On October 7, 1998, Dr. Sayre surgically inserted five dental implants in Veda's lower jaw. On October 15, 1998, she returned for her scheduled follow-up visit and complained of numbness in her jaw. Dr. Sayre testified that he told her, "[y]ou need to have another procedure. We need to do it very soon. And out of her mouth came, oh, no. Oh, I can't. Oh. And [Dr. Sayre] said a second time, Veda, I understand you're upset. You need to have a second procedure. We need to get the pressure off of these. Let's set you up for next week, and let's get into this. And that's all I said. That was the end of the appointment." Sayre also testified that his office tried unsuccessfully to contact Veda the following week.
{¶ 6} By October 29, 1998, two weeks after her follow-up visit with Dr. Sayre, Veda was under the care of a new physician, Dr. Blazic, a maxillofacial surgeon. She spoke with Dr. Sayre's office on November 5, 1998, and said that she was "debilitated." On November 10, 1998, she informed Dr. Sayre that Dr. Blazic was her new physician, and on November 23, 1998, Dr. Blazic contacted Dr. Sayre to discuss Veda's condition. Approximately eight weeks after her original surgery, Veda had her implants "backed out," and shorter ones were inserted by Dr. Blazic.
{¶ 7} Dr. Sayre testified at trial that if Veda had come back for a "second procedure" within four to six weeks, her permanent nerve damage would have been completely prevented. Regardless of that testimony, evidence demonstrated that Dr. Sayre never informed Veda that the operation had to be performed within six weeks from the initial surgery. Further, he never told her that if she did not have the "second procedure," she would suffer permanent nerve damage. He only stated that she needed to return "soon."
{¶ 8} Veda followed Dr. Sayre's professional advice and sought follow-up care immediately. She just chose to seek that care from a different physician, Dr. Blazic. Dr. Blazic did perform the second procedure [removal of the implants] within eight weeks of her initial surgery. This evidence that the surgery was performed within eight weeks instead of six tended to support Sayre's other defense: that an intervening cause [Dr. Blazic's alleged negligence] had produced Veda's permanent nerve damage, and not Veda's own negligence. (The trial court did instruct the jury on intervening and superceding causes.)
{¶ 9} We hold that the evidence in the record, particularly that Veda did heed Dr. Sayre's professional advice and immediately sought follow-up care, was insufficient to create a factual issue from which "reasonable minds might conclude that [Veda] was negligent."[5]
Consequently, a jury instruction on comparative negligence was not required. The single assignment of error is overruled, and the judgment of the trial court is affirmed.
{¶ 10} Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Doan, P.J., Hildebrandt and Winkler, JJ.
[1] Three days before oral arguments in this court, the McWhorters moved to supplement the record with Dr. Meyer's trial testimony. Sayre did not object to this motion. Thus, we find the motion to be well taken and order the record to be supplemented accordingly. See App.R. 9(E).
[2] Marshall v. Gibson (1985), 19 Ohio St.3d 10, 12, 482 N.E.2d 583.
[3] See Riley v. Cincinnati (1976), 46 Ohio St.2d 287, 297,348 N.E.2d 135.
[4] Feterle v. Huettner (1971), 28 Ohio St.2d 54, 275 N.E.2d 340.
[5] See Ponti v. Erieside Clinic, Inc., (Mar. 17, 1995), 8th Dist. No. 93-L-205 (a comparative-negligence instruction was warranted in a wrongful- death case against a doctor when the patient failed to undergo a biopsy recommended by the doctor even after the doctor had described the risk of a malignant tumor, and when the patient waited ten months before returning for a checkup, ignoring the doctor's advice to return in three months). The case sub judice can be distinguished from EriesideClinic. Here, Veda followed the advice of her doctor and did not delay in seeking follow-up care.