JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Kelley Ferraro (KF) appeals from a jury verdict in favor of appellee, Lu-Jean Feng, M.D. (Feng), who sued the firm for legal malpractice. For the following reasons, we affirm.
 {¶ 2} On December 29, 2005, Feng sued KF in common pleas court alleging that it breached the standard of care by failing to properly handle her divorce case. She alleged that KF did not prepare adequately for the trial. She further alleged that KF's attorneys exerted undue influence over her to settle the divorce when they advised her that she was subject to criminal and medical licensure penalties related to signing her name on a loan application that allegedly overvalued her clinic. Feng claimed that if KF had not coerced her into a settlement based upon specious threats of criminal indictments and licensure problems, she would have achieved a better resolution of her divorce at trial.
 {¶ 3} On May 28, 2008, the malpractice case proceeded to trial. At the close of plaintiff's case, KF moved for directed verdict, which was denied. Prior to the conclusion of trial, KF sought a jury instruction on equitable estoppel based upon Feng's prior testimony that she understood and agreed to the terms of the divorce settlement. Because of this testimony, KF argued that Feng was estopped from claiming that KF committed malpractice against her. The trial court refused to instruct the jury on this issue.
 {¶ 4} On June 3, 2008, the jury returned a verdict in favor of Feng, awarding $832,929.50 in damages. *Page 4 
 {¶ 5} On June 17, 2008, KF filed a motion for new trial and a motion for judgment notwithstanding the verdict, both of which were denied. This appeal followed.
 {¶ 6} ASSIGNMENT OF ERROR ONE
 "The Trial Court erred in denying Defendant-Appellant's motions for directed verdict and for judgment notwithstanding the verdict because Plaintiff-Appellee failed to present evidence that the alleged legal malpractice proximately caused her damages."
 {¶ 7} Motions for directed verdict and motions for judgment notwithstanding the verdict (JNOV) are subject to de novo review.Pariseau v. Wedge Products, Inc. (1988), 36 Ohio St.3d 124. In reviewing such motions, we are required to test whether the evidence, when construed most strongly in favor of appellees, is legally sufficient to sustain the verdict. Environmental Network Corp. v. Goodman WeissMiller, L.L.P., 119 Ohio St.3d 209, 2008-Ohio-3833. Where, as here, a plaintiff claims that she would have been better off if the underlying matter had been tried rather than settled, the standard for proving causation requires more than just some evidence of the merits of the underlying lawsuit. Id. at 213. Thus, in the case sub judice, Feng had the burden of proving that but for KF's conduct, she would have received a more favorable outcome in the underlying matter. Id.
 {¶ 8} In both the directed verdict and JNOV motions, and indeed in its brief, appellant argues that Feng has failed to submit sufficient evidence of proximate cause to either allow the jury to decide the case and/or to support its verdict. When *Page 5 
viewing the evidence most strongly in favor of Feng, as the law requires, we disagree.
 {¶ 9} The crux of Feng's malpractice claim stemmed from advice she received from KF on the second day of her divorce trial that an allegedly false loan document that she signed subjected her to federal prosecution and/or forfeiture of her medical license. Specifically, Feng claimed that KF's attorneys pressured her into settling the case on the second day of trial, rather than testify about the specifics of the loan document. As a result of KF's malpractice, Feng claimed she received an inequitable distribution of assets. A jury agreed with her claims.
 {¶ 10} While there is considerable debate about the level of Feng's knowledge surrounding the loan document, what is undisputed is that KF, through its attorneys, [1] represented to Feng that her opposing counsel threatened to use the loan document to get her indicted. No one from KF told Feng that such threats are illegal and unethical — that is, that no attorney may use the threat of criminal prosecution to effect a result in a civil case.[2] See Cuyahoga Cty. Bar Assn. v.Wise, 108 Ohio St.3d 164, 2006-Ohio-550. This specious threat was the fulcrum that KF used to settle Feng's divorce case.
 {¶ 11} The quantum of evidence necessary to prove causation in a legal malpractice case is relatively straightforward. Feng was required to prove what *Page 6 
amounts to the "case within a case," whereby all issues that would have been litigated in the previous action are litigated between the plaintiff and the plaintiff's former lawyer, with the latter taking the place and bearing the burdens the plaintiff would have borne in the original trial. Environmental Network, supra. Taking on these roles, Feng's burden at trial was to prove that the outcome of her divorce would have been different if she had tried the case. Id. In order to prove causation and damages, Feng was required to prove that the KF's actions resulted in settling the case for less than she would have received at trial. Id. at syllabus.
 {¶ 12} KF argues that this case is factually similar toEnvironmental Network and should be decided identically. However, this case is factually distinguishable from Environmental Network for two reasons. First, the settlement in this case was decidedly unfavorable to Feng, whereas the settlement in Environmental Network was favorable. Id. at 214-216. Second, the appellees in Environmental Network, in adhering to the standard set forth in Vahila v. Hall, 77 Ohio St.3d 421,1997-Ohio-259, failed to show on appeal that the outcome would have been different if they had tried the case. Such is not the case here.
 {¶ 13} At trial, Feng's counsel elicited evidence that KF failed to meet the standard in several ways. These include firing the court-appointed asset appraiser and failing to hire a new appraiser to value the business assets of Feng's husband. This firing resulted not only in the failure to properly evaluate the marital assets, but also in the former appraiser obtaining a judgment against Feng. *Page 7 
 {¶ 14} According to Feng, one of KF's attorneys said they would "take care of" representing her in that matter. The record does not reflect that they ever did so.
 {¶ 15} According to the record, KF's failure to hire an expert to value the business of Feng's husband resulted in its considerable worth being left out of the evaluation of marital assets. What is more, the marital assets that were valued by KF in the case were valued as of 2001, not 2004, because there were three years' worth of valuations missing from the assets in KF's files. Also, the final settlement was inconsistent with R.C. 3105.171 — Ohio's "equal unless equal is not equitable" standard.[3]
 {¶ 16} At trial, Feng's counsel proved that there was a discrepancy of approximately $815,000 between what Feng received through settlement and what she would have received at trial, based upon the total accounting of all marital assets and R.C. 3105.171. The evidence in the record, relied upon by the jury in reaching its verdict, is that Feng would have received a better outcome had she tried her divorce case. The jury awarded her $832,929.50.
 {¶ 17} In its appeal, KF argues that because she failed to disclose the existence of the loan document to them, Feng is unable to prove that "but for" KF's *Page 8 
negligent conduct, she would have received a better result in her divorce. They argue that she never disclosed the documents, even when they asked her to. They further argue that they were surprised on the second day of the divorce trial when opposing counsel produced the loan application with Feng's signature from Charter One Bank.
 {¶ 18} But KF's argument assumes that it should not have known of the documents before trial, and that the advice it dispensed to Feng with respect to the loan document, as well as the nature in which they dispensed that advice, met the standard of care. We hold it did not. KF received notice that Feng's Charter One accounts were being subpoenaed one month before trial. Feng's attorneys elicited expert testimony that the failure to investigate the Charter One subpoena breached the standard of care. KF did not rebut this at trial.
 {¶ 19} Although KF argues that Feng was unwilling to try the case because of this document, it fails to acknowledge that the source of Feng's unwillingness emanated from their own advice. In addition to ignoring its other failures in trial preparation and its failure to accurately value the marital estate, KF's argument also ignores its failure to (a) discern the loan document's existence until day two of the trial, when, in fact, KF had over one month to find this document, and (b) advise Feng candidly about the actual consequences she faced in light of the document, which were much more minimal than KF led her to believe.[4] *Page 9 
 {¶ 20} Feng testified that she told her lawyers she never knowingly attempted to defraud the bank by signing the loan papers. Their response, according to Feng, was to state that all opposing counsel (or anyone) had to do was "walk across the street" and get her indicted. Further, KF represented that opposing counsel in her divorce action possessed just the type of unsavory character to do so.
 {¶ 21} True or not, this ignores the fact that such a threat is illegal in the first instance, and cannot be used to gain advantage in a civil case, much less settle it.[5] Giving legal advice based upon such specious threats and using them to cajole a client into settling a divorce case upon harshly inequitable terms violates the standard of care for a reasonably prudent and competent attorney in the same or similar circumstances.
 {¶ 22} KF's failure to prepare for trial and consequent use of a document it should have known about before the second day of trial so as to pressure Feng into settling the case constituted malpractice. But for KF's advising Feng to settle the divorce case on the basis of the loan document, she would have received a more favorable outcome. Ohio's "equal unless not equitable" law virtually guarantees she would have received a better outcome if she had tried the case.
 {¶ 23} Based upon the above evidence elicited at trial, the trial court did not err in denying KF's motions for directed verdict and judgment notwithstanding the *Page 10 
verdict. When viewed in a light most favorable to Feng, these facts prove that a jury could reasonably have found that KF committed malpractice in representing Feng in her divorce.
 {¶ 24} Appellant's first assignment of error is overruled.
 {¶ 25} ASSIGNMENT OF ERROR TWO
 "The Trial Court committed prejudicial and reversible error when it failed to instruct the jury on equitable estoppel and later, when it denied Kelley Ferraro's Motion for New Trial."
 {¶ 26} It is well established that trial courts will not instruct the jury where there is no evidence to support an issue. Riley v.Cincinnati (1976), 46 Ohio St.2d 287. Further, "[i]n reviewing a record to ascertain the presence of sufficient evidence to support the giving of an instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction." Feterle v. Huettner
(1971) , 28 Ohio St.2d 54, 57.
 {¶ 27} The record before this court is devoid of evidence upon which reasonable minds might reach the conclusion sought by appellant's equitable estoppel instruction request.
 {¶ 28} In its second assignment of error, KF argues in essence that Feng's subsequent sworn representations that she assented to the settlement somehow show that the trial judge erred in failing to instruct the jury on equitable estoppel and denying its motion for new trial. KF argues that because Feng was unwilling to accept any degree of risk of criminal and licensure penalties as a result of the loan document she is estopped from claiming that KF committed malpractice. KF cites *Page 11 
to examples in the record below where Feng affirmed that she agreed to her divorce settlement under oath.
 {¶ 29} As stated above, this argument assumes that Feng acted in a vacuum; it ignores the provenance of the advice KF gave to her in the first place. Feng's assent to the terms of her divorce decree only underscores the fact that she followed her attorneys' advice. It does not mean that advice met the standard of care.
 {¶ 30} Based upon the foregoing facts, the trial court committed no error in refusing to instruct the jury on equitable estoppel.
 {¶ 31} With respect to the denial of KF's motion for new trial, aside from its mention in the assignment of error, KF fails to argue this point anywhere in its brief. We therefore decline to address it. See App. R. 12(A)(2). "The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App. R. 16(A)." Id.
 ASSIGNMENT OF ERROR THREE "The trial court committed prejudicial and reversible error when it took judicial notice of the mens rea required under 18 USCA § 1001, et seq."
 {¶ 32} A court may take judicial notice of a fact not subject to reasonable dispute that is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Evid. R. 201(B). The court may do so at any time during the proceeding. Evid. R. 201(F). Pursuant to *Page 12 
Evid. R. 201(C), it is clearly within the trial court's discretion to take judicial notice. Moreland Hills v. Gazdak (1988), 49 Ohio App.3d 22.
 {¶ 33} In this case, the trial court, during the cross-examination of one of KF's witnesses, took judicial notice that there is a mens rea aspect to any crime. According to KF, the trial court's taking judicial notice of this fact wrongly implied to the jury that Feng was required to act with specific intent to defraud her bank in order to be subject to criminal penalties when she signed her loan documents. Such an argument is without merit.
 {¶ 34} KF argues that it was prejudiced by the court's judicial notice that mens rea is an aspect of any crime, because the court denied their motion for directed verdict. KF argues that in denying its motion, the court specifically relied on the mens rea requirement found in 18 USCA § 1001, et seq. Nowhere is this found in the record.
 {¶ 35} The trial court, outside of the presence of the jury, denied the motion for directed verdict, and in doing so indicated during its colloquy with counsel that one of KF's witnesses, Mr. Wilson, testified there was a negligence aspect to the statute. The court merely stated that it disagreed with that reading. Since no jurors were present at this time, the court could not have implied anything about the intent aspect of the statute to the jury. What is more, the judicial notice KF complains of took place during the cross-examination of Mr. Frost, where the court simply stated "[t]hat there is a requirement *** called mens rea, and there's an intent aspect to any crime in the State of Ohio, and that's applicable to both statewide and federal." *Page 13 
Nothing in this statement implies any requirement at all — other than its existence — to the jury.
 {¶ 36} Further, the court cured any potential prejudice by properly instructing the jury that it was not to infer anything from the court's conduct of the trial, or its rulings, stating: "[i]f I said or did anything during the course of this trial that gives you any indication of my thought process, please disregard it. Don't let that factor into your decision of this case."
 {¶ 37} Because the mens rea requirement of any crime is a fact that is readily discernable by resort to sources whose accuracy cannot reasonably be questioned (in this case the US Code), the court did not abuse its discretion in taking judicial notice of the mens rea requirement of 18 USCA § 1001, et seq. The accuracy of the mens rea requirement is readily discernable from the text of the statute itself, and taking such notice is strictly in accord with Evid. R. 201(B). Because of this, the trial court did not abuse its discretion in taking such notice.
 {¶ 38} Appellant's third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed. The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
CHRISTINE T. McMONAGLE, J., and LARRY A. JONES, J., CONCUR
[1] One of whom represented to Feng that he was a white-collar criminal defense lawyer.
[2] Ohio Professional Conduct Rule 1.2(e).
[3] R.C. 3105.171(C)(1) states: "Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable."
[4] In fact, Feng's loan (the repayment of which was never an issue in either the divorce or malpractice case) is a matter between her and the bank. She has never been subjected to any negative civil or criminal penalties for negotiating it; much less prosecution and/or loss of her medical license because of it.
[5] Ohio Prof. Cond. Rule 1.2(e). *Page 1