[Cite as *State v. Stevenson*, 2020-Ohio-3593.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 108826 |
| v. | : | |
| JOVONA STEVENSON, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 2, 2020

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-637879-A

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Brian Lynch, Assistant Prosecuting Attorney, *for appellee.*

Law Office of Britt Newman and Britt Newman; Eric Norton, *for appellant.*

RAYMOND C. HEADEN, J.:

{¶ 1} Defendant-appellant Jovona Stevenson ("Stevenson") appeals from her conviction for felonious assault. For the reasons that follow, we affirm.

**Procedural and Substantive History**

{¶ 2} On June 16, 2018, the Cuyahoga County Grand Jury indicted Stevenson on one count of felonious assault in violation of R.C. 2903.11(A)(1) and one count of felonious assault in violation of R.C. 2903.11(A)(2). Both counts carried one- and three-year firearm specifications. Stevenson pleaded not guilty to the charges.

{¶ 3} These charges arose from an incident that took place on June 16, 2018. Around 4 p.m. that afternoon, Stevenson picked up Tierra Head ("Head") from a family birthday party. Stevenson and Head were coworkers who had known each other for approximately two years and sometimes socialized together. After picking up Head, Stevenson dropped her children off at her grandmother's house. Stevenson and Head then went to a liquor store to purchase a bottle of tequila. The bottle cost $52. Head only had $18 at the time, so Stevenson agreed to cover more than half the cost with the understanding that Head would pay her back.

{¶ 4} Stevenson and Head began drinking tequila, and they drove around for a while before stopping at Kerruish Park to meet some friends. The women spent a couple hours there, drinking and smoking marijuana. They finished the bottle of tequila and then decided to go to a graduation party for one of Head's friends at Luke Easter Park, a different park in Cleveland. Upon arriving at Luke Easter Park, Stevenson dropped Head off in the parking lot and Head went to the party. After several minutes, Head began to wonder where Stevenson was, so she went back to the parking lot to find her. Head found Stevenson in the parking lot, standing

outside of her car, arguing with a man unknown to both women. Head attempted to calm Stevenson down, at one point grabbing her arm and trying to pull her away from the man. Stevenson pulled her arm out of Head's grasp and yelled at Head. Stevenson then got into her vehicle and left.

{¶ 5} Several minutes later, Stevenson drove back into the parking lot and pulled up near where Head was standing on the sidewalk. Stevenson demanded that Head pay her back the $8 she owed her for the tequila and said that she would not leave until Head paid her. Head told Stevenson that she did not have the money and that Stevenson would need to wait. At that point, Stevenson began to step out of her vehicle. With one foot in her vehicle and one foot out of it, Stevenson raised a 9 mm handgun and fired one shot. The shot struck Head in the neck and knocked her down. Head broke her ankle while falling to the ground.

{¶ 6} Stevenson then walked over to Head and Head said, "you shot me," to which Stevenson responded, "no I didn't." Stevenson then ran to her vehicle and drove away. Several bystanders helped Head into their car and drove her to University Hospitals. Head underwent emergency surgery. At the hospital, Head made a preliminary statement to Cleveland Police Officer Scott Floyd ("Officer Floyd"). Subsequently, Head made a second statement to Cleveland Police Detective Kelvin Barrow ("Detective Barrow"). She also identified Stevenson as the individual who shot her when shown a photo array. A warrant was issued for Stevenson in late June 2018. Stevenson was arrested on March 3, 2019.

{¶ 7} On June 13, 2019, the case proceeded to a jury trial. The state called Head to testify, and she provided the foregoing summary of the shooting. Head also identified Stevenson at trial. The state introduced the audio recording of a 911 call into evidence. The caller identified herself as April Johnson. When the recording was played at trial, Head identified the caller as Stevenson based on her voice. The caller reported a shooting at Luke Easter Park. At one point in the call, she said that the shooter "pulled up her pistol and shot her." At another point, she said that the shooter got out of her car "and was like pow," indicating that the shooting was not accidental. Later in the call, she said that the victim tried to take a swing at the shooter, and the shooter was in her car and accidentally fired a shot.

{¶ 8} The state also called former Cleveland Police Officer Adam Hymes ("Officer Hymes"), who testified that on June 16, 2018, he was dispatched to Luke Easter Park based on a report that a woman had been shot. Upon arriving at the park, Officer Hymes spoke to two bystanders, one of whom was named Maurice McClain ("McClain"). Officer Hymes learned that both the victim and the suspect had left the scene. Officer Hymes then spoke with dispatch and learned that a woman had shown up to University Hospitals with a gunshot wound. The state introduced photographs taken from Officer Hymes's body camera footage, and the photographs confirmed his testimony that he observed a pool of blood in the parking lot.

{¶ 9} The state also called Cleveland Police Detective Michael Hale ("Detective Hale"), who testified that he responded to the park on June 16, 2018,

because he had received a report that someone had been shot.  Upon arriving at the scene, Detective Hale began to lay down evidence markers, take photographs, and collect evidence.  The evidence collected at the scene included a jacket, a phone, an ID, and swabs of blood.

{¶ 10}  The state also called Officer Floyd, who testified that on June 17, 2018, he responded to University Hospitals in connection with the shooting and interviewed Head.  Officer Floyd then returned back to the police station and prepared a police report.

{¶ 11}  Next, the state called Detective Barrow, who testified that he was assigned to this case on June 18, 2018.  Upon receiving reports from Officer Hymes and Officer Floyd, he reviewed them and began his investigation.  On June 19, 2018, once Head had been released from the hospital, Detective Barrow went to her home and interviewed her about the shooting.  Several days later, Detective Barrow obtained a warrant for Stevenson's arrest.

{¶ 12}  Detective Barrow interviewed Stevenson after her arrest in March 2019.  The state introduced the video recording of Detective Barrow's body camera footage from this interview.  When Detective Barrow initially asked Stevenson if she was present during the shooting, she said she was not.  Stevenson also denied knowing Head when initially asked.  Later in the interview, Stevenson stated that she waited at the scene with Head and offered to give her a ride to the hospital.  Stevenson stated that she was holding her gun in her right hand when Head punched her from behind.  At the start of the interview, Stevenson said that she fired the

weapon when Head hit her. At another point during the interview, Stevenson denied firing the weapon and said that there were no rounds missing from the chamber of her gun. At a later point in the interview, she claimed she was unsure if she fired the weapon.

{¶ 13} During the interview, Stevenson told Detective Barrow that she had called 911 after the shooting. She also acknowledged that she knew a warrant had been issued for her arrest, but did not turn herself in.

{¶ 14} The state called McClain, who testified that he was at Luke Easter Park on June 16, 2018. As he was leaving the park that night, he heard two women arguing and a gunshot. Shortly thereafter, a woman ran toward him screaming that she had been shot. McClain said that she was bleeding from the neck and clearly looking for help. He retrieved a jacket from his car and put it on her neck to stop the bleeding. McClain testified that approximately one minute after he heard the gunshot, he saw a car exit the parking lot.

{¶ 15} At the close of the state's case, Stevenson made a Crim.R. 29 motion for acquittal. The court denied this motion. The state requested that the court instruct the jury that there was evidence of flight because Stevenson left the scene. The court declined to give this instruction. Stevenson requested that the court issue an accident instruction. The court declined to give this instruction as well. On June 17, 2019, the jury returned a guilty verdict on all counts and specifications.

{¶ 16} On June 18, 2019, the court held a sentencing hearing. Both counts merged for sentencing, and the state elected that the court sentence Stevenson on

Count 1. The court sentenced Stevenson to three years on the firearm specification, to be served consecutively to three years on the underlying offense, for an aggregate sentence of six years in prison. The court also imposed three years of postrelease control, and ordered Stevenson to pay court costs. Stevenson appeals, presenting one assignment of error for our review.

**Law and Analysis**

{¶ 17} In her sole assignment of error, Stevenson argues that the trial court erred and impaired her constitutional right to present a defense by denying her request for an accident instruction.

{¶ 18} In Ohio, it is well established that the trial court will not instruct the jury where there is no evidence to support an issue. *Riley v. Cincinnati*, 46 Ohio St.2d 287, 297, 348 N.E.2d 135 (1976). Where a defendant claims that a particular instruction should have been given, the proper standard of review for an appellate court is whether the trial court's refusal to give a defendant's requested instruction constituted an abuse of discretion under the facts and circumstances of the case. *State v. Ratliff*, 8th Dist. Cuyahoga No. 70445, 1997 Ohio App. LEXIS 1957, 25 (May 8, 1997), citing *State v. Wolons*, 44 Ohio St.3d 64, 541 N.E.2d 443 (1989). An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 19} Stevenson was charged with one count of felonious assault, in violation of R.C. 2903.11(A)(1), which provides that "no person shall knowingly * * *

cause serious physical harm to another." She was convicted of a second count of felonious assault, in violation of R.C. 2903.11(A)(2), which provides that "no person shall knowingly * * * cause or attempt to cause physical harm to another." Both of these charges required the state to establish beyond a reasonable doubt that Stevenson acted knowingly in firing the shot that injured Head.

{¶ 20} In Ohio, accident is not an affirmative defense. *State v. Poole*, 33 Ohio St.2d 18, 20, 294 N.E.2d 888 (1973). It operates instead as a denial or negation of the culpable mental state of the charged offense — here, the mental state of knowingly. *State v. Smith*, 8th Dist. Cuyahoga No. 62427, 1993 Ohio App. LEXIS 2635, 14 (May 20, 1993).

{¶ 21} An accident is defined as an unfortunate event occurring casually or by chance. *State v. Brady*, 48 Ohio App.3d 41, 42, 548 N.E.2d 278 (11th Dist.1988); *State v. Flemming*, 8th Dist. Cuyahoga No. 68664, 1996 Ohio App. LEXIS 3865, 25 (Sept. 5, 1996). The Ohio Jury Instructions articulate accident, in relevant part, as follows:

> 1. The defendant denies any purpose to (*describe*). He denies that he committed an unlawful act and says that the result was accidental.
>
> 2. DEFINED. An accidental result is one that occurs unintentionally and without any design or purpose to bring it about. An accident is a mere physical happening or event, out of the usual order of things and not reasonably (anticipated) (foreseen) as a natural or probable result of a lawful act.

*Ohio Jury Instructions*, CR Section 421.01 (2019). For such an instruction to be warranted, it must be supported by the record. *Brady* at paragraph one of the syllabus.

{¶ 22} Here, Stevenson argues that the court's reason for declining to issue an accident instruction was based on semantics because the court emphasized that Stevenson never specifically used the word "accident" when describing the shooting.

{¶ 23} In support of her argument, Stevenson points to the exchange described in Head's testimony immediately after the shooting in which Head told Stevenson, "you shot me" and Stevenson responded, "no I didn't." Stevenson asserts that although she was obviously wrong about not having shot Head, this statement is strong circumstantial evidence that she did not knowingly fire the gun. Even if we agreed that this is evidence that Stevenson shot Head accidentally, the remainder of the evidence in the record undermines this argument.

{¶ 24} Although Stevenson exercised her right not to testify at trial, the record contains numerous statements in which she discussed the shooting. The trial court was correct that throughout these statements, Stevenson never asserted that she accidentally shot Head. Stevenson argues that her request for an accident instruction is supported by her statement that she did not shoot Head because she "wouldn't do that to a friend." This is not evidence that the shooting was an accident. It is a denial. Stevenson followed this statement with a denial that she had even been present when Head was shot.

{¶ 25} Beyond these denials, Stevenson's 911 call, in which she pretended to be a witness and not the shooter, characterized the shooting as an intentional act. Further, Head's testimony also characterizes the shooting as intentional. Finally, there is nothing in the record that explains how someone sitting in an automobile, with a firearm secured in their waistband, could have accidentally shot a person standing at least five feet away in the neck. After a thorough review of the record, we find nothing unreasonable, arbitrary, or unconscionable in the court's denial of Stevenson's request for an accident instruction because the instruction was unsupported by the record.

{¶ 26} Therefore, Stevenson's sole assignment of error is overruled.

{¶ 27} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____

RAYMOND C. HEADEN, JUDGE

MARY J. BOYLE, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR