REICHARD, Appellant,

v.

RJ WHEELS, INC. et al., Appellees.

[Cite as *Reichard v. RJ Wheels, Inc.*, 193 Ohio App.3d 334, 2011-Ohio-1597.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 10AP–530.

Decided March 31, 2011.

Malek & Malek and Douglas C. Malek, for appellant.

Lane, Alton & Horst L.L.C., and Joshua R. Bills, for appellee RJ Wheels, Inc.

Michael DeWine, Attorney General, and Allan K. Showalter, Assistant Attorney General, for appellee Ohio Bureau of Workers' Compensation.

———

DORRIAN, Judge.

{¶ 1} Plaintiff-appellant, Kenneth Reichard ("appellant"), appeals from a judgment in conformance with a jury verdict in the Franklin County Court of Common Pleas finding that appellant is not entitled to participate in the Workers' Compensation Fund for claims of left lateral epicondylitis and left elbow contusion. The trial court also declined to award appellant reimbursement for certain costs. For the reasons that follow, we affirm the trial court's judgment and reverse the trial court's order with respect to reimbursement of deposition costs.

{¶ 2} Appellant was employed by defendant-appellee, RJ Wheels, Inc., as an automobile technician/mechanic during early 2008. Appellant asserts that at some point in February 2008, while working at RJ Wheels, he bumped his left elbow against a car fender. He claims that he experienced bruising and pain in his left elbow after this incident. Appellant filed a workers' compensation claim with the Industrial Commission of Ohio, asserting that he was entitled to compensation for injuries to his left elbow as a result of striking his elbow on a car fender on February 12, 2008. A district hearing officer denied appellant's claim after a hearing on June 25, 2008. Appellant appealed, and a staff hearing officer denied the claim following a hearing on August 13, 2008. Appellant then appealed to the Franklin County Court of Common Pleas, naming RJ Wheels and

defendant-appellee Marsha P. Ryan, in her capacity as administrator of the Bureau of Workers' Compensation ("BWC"), as defendants. Appellant's complaint sought a judgment that he was entitled to participate in the Workers' Compensation Fund for left lateral epicondylitis, left distal biceps tendinopathy, a strained/sprained left elbow, and a contusion on his left elbow, "by way of direct causation and/or aggravation and/or substantial aggravation and/or flow through and/or repetitive trauma." The case was assigned to a magistrate and tried before a jury. Appellant testified on his own behalf and presented videotaped testimony from Dr. William Anderson, who treated appellant for left lateral epicondylitis. RJ Wheels and BWC presented testimony from RJ Wheels' owners and an employee of RJ Wheels, as well as videotaped testimony from Dr. Paige Gutheil, who treated appellant's injuries, and Dr. Karl Kumler, who examined appellant and reviewed his medical records. At the close of the evidence, the magistrate issued instructions and submitted two interrogatories to the jury. The jury answered the interrogatories in the negative and found that appellant was not entitled to participate in the Workers' Compensation Fund. The trial court issued a judgment entry reflecting the jury's verdict and ordering that the costs of the case were to be paid by appellant.

{¶ 3} Appellant appeals, setting forth the following four assignments of error:

█ The trial court erred, on March 16, 2010, to the prejudice of Plaintiff–Appellant in submitting a jury interrogatory to the jury that was inconsistent with the jury instructions, and consequently misleading.

█ The trial court erred, on March 16, 2010, to the prejudice of Plaintiff–Appellant in submitting a jury interrogatory to the jury that implicitly limited the theory of causation to direct causation despite a repetitive motion theory of causation instruction having been provided to the jury in the jury instructions.

█ The trial court erred, on March 16, 2010, to the prejudice of Plaintiff–Appellant by precluding the jury from deciding the case on an alternative theory of causation, repetitive motion causation.

█ The trial court erred in denying Plaintiff–Appellant reimbursement for the costs of the stenographic depositions of the physicians that testified in the trial.

{¶ 4} Appellant's complaint alleged that his injuries were caused by a direct incident ("single-incident causation"), aggravation, or repetitive trauma ("repetitive-use causation"). Appellant's first three assignments of error assert that the trial court erred by submitting interrogatories asking the jury to determine whether appellant's injuries were caused by striking his elbow on a car fender, because the interrogatories implicitly limited the jury to considering single-incident causation and precluded them from finding for appellant based on

repetitive-use causation. These assignments of error involve the same relevant law and issues, and we will consider them together.

{¶ 5} As an initial matter, we note that BWC asserts that appellant was precluded from raising the theory of repetitive-use causation in the common pleas court because he had not alleged that theory of causation at the administrative level. Because, as discussed herein, we find that there was no error in the jury instructions and interrogatories, we need not reach this issue. Further, we note that a decision from another court regarding the scope of appeal under R.C. 4123.512 is currently pending review in the Supreme Court of Ohio. See *Starkey v. Builders Firstsource Ohio Valley, L.L.C.*, 187 Ohio App.3d 199, 2010-Ohio-1571, 931 N.E.2d 633, appeal filed May 24, 2010, Ohio Supreme Court Case No. 2010–0924.

{¶ 6} An interrogatory that precludes the jury from considering a potential theory of liability may be improper. See *Freeman v. Norfolk & W. Ry. Co.* (1994), 69 Ohio St.3d 611, 614, 635 N.E.2d 310, citing *Riley v. Cincinnati* (1976), 46 Ohio St.2d 287, 299, 75 O.O.2d 331, 348 N.E.2d 135. In *Riley*, the Supreme Court of Ohio held that the trial court did not err in denying two interrogatories that referred only to the issue of actual notice in a case where the plaintiff could succeed by proving actual notice or constructive notice. The Supreme Court concluded that the interrogatories were "incomplete, confusing, and potentially prejudicial" to the plaintiff. *Riley* at 299. However, jury instructions and interrogatories must be based on the evidence presented in a case. "It is well established that the trial court will not instruct the jury where there is no evidence to support an issue." *Murphy v. Carrollton Mfg. Co.* (1991), 61 Ohio St.3d 585, 591, 575 N.E.2d 828, citing *Riley*. " 'In reviewing a record to ascertain the presence of sufficient evidence to support the giving of a[n] * * * instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction.' " Id., quoting *Feterle v. Huettner* (1971), 28 Ohio St.2d 54, 57 O.O.2d 213, 275 N.E.2d 340, syllabus. Likewise, a trial judge has authority to decline to give jury interrogatories that are not based on the evidence presented in the case. See *Ragone v. Vitali & Beltrami Jr., Inc.* (1975), 42 Ohio St.2d 161, 165–166, 71 O.O.2d 164, 327 N.E.2d 645; *Ramage v. Cent. Ohio Emergency Servs., Inc.* (1992), 64 Ohio St.3d 97, 107–108, 592 N.E.2d 828.

{¶ 7} In *Murphy*, a workers' compensation claimant asserted that a workplace injury suffered in 1964, and the subsequent effects of that injury, hastened her husband's death in 1983. *Murphy* at 585–586. Her appeal claimed that the trial court erred in refusing to instruct the jury that there could be more than one proximate cause of death. Id. at 586. The Supreme Court of Ohio agreed, concluding that testimony from two doctors that the 1964 injury caused the

husband's death constituted "sufficient medical expert testimony to warrant a jury instruction as to dual causation." Id. at 590. We have a different situation here.

{¶ 8} In this case, the interrogatories required the jury to determine whether RJ Wheels employed appellant at the time of his claimed injuries and whether his injuries were "a result of impacting his elbow on the fender of an automobile." The jury instructions, by contrast, included multiple definitions of the term "injury," including "physical harm that develops over time as the gradual result of the injured employee's work on job-related duties" and "physical harm caused by an unforeseen, unexpected and unusual event." Thus, the general jury instructions would have permitted the jury to consider single-incident causation or repetitive-use causation. However, the interrogatories asked the jury only to determine whether a single incident caused appellant's injuries. After reading the interrogatories to the jury, the magistrate explained the general verdict forms. He told the jury that their general verdicts "should be consistent with [their] finding on the interrogatories" and that they had "already answer[ed] the question, essentially, so whatever you answered [there] essentially it's transposed here." We find that the combined effect of the interrogatories and jury instructions, including the magistrate's verbal instructions, limited the jury to considering single-incident causation. However, as detailed below, we also find that based on the evidence presented, reasonable minds could not find that appellant had established repetitive-use causation.

{¶ 9} Appellant's testimony and evidence focused heavily on a theory of single-incident causation, specifically that his injury was caused by bumping his elbow on a car fender. Appellant testified that the pain in his elbow began sometime in February 2008, after bumping his elbow on a car fender at work. He told one of his treating physicians, Dr. Anderson, that he struck his elbow and felt as if the muscle tore from the bone. Similarly, he told another of his treating physicians, Dr. Gutheil, that the injury occurred after he hit his arm against a car at work.

{¶ 10} Appellant provided no direct evidence of engaging in specific repetitive activities as part of his employment. He testified broadly as to the types of tasks he performed as a mechanic—e.g., oil changes, brake replacement, suspension work. Appellant also testified that he used both his right and left hands in performing these tasks. However, appellant provided no testimony or other direct evidence to establish that his work as a mechanic required him to do specific repetitive activities involving his left elbow such as twisting a screwdriver, turning a wrench, or swinging a hammer. Appellant's attorney referred to "hitting a hammer" as a type of repetitive activity that a mechanic might perform in questions to one of the medical experts and in closing argument, but

statements of counsel in posing a question or in argument are not evidence. *State v. Walters*, 10th Dist. No. 06AP–693, 2007-Ohio-5554, 2007 WL 3026956, ¶ 81. It appears that appellant sought to establish that he did not engage in repetitive activities outside work, testifying that he had never played tennis and had not recently played baseball or bowled; but he did not offer proof establishing specific repetitive activities that were within the scope of his employment.

{¶ 11} Additionally, there was no direct evidence that appellant's injuries were caused by repetitive work activities. Appellant's medical expert, Dr. Anderson, testified to his opinion that appellant's epicondylitis "was caused by a direct trauma to the left elbow"—i.e., a single incident, such as striking his elbow on a car fender. In contrast, the medical testimony regarding repetitive use was based on speculation and prompted by hypothetical questions. Dr. Anderson testified that appellant's injury "could have" been caused by overuse. Although both Dr. Gutheil and Dr. Kumler testified that appellant had a degenerative condition in his elbow, neither physician could link that condition to repetitive activity at work. Dr. Gutheil testified that overuse was the most common cause of lateral epicondylitis and that it was "possible" that as a mechanic appellant may have performed repetitive activities that could have led to his injury. Similarly, Dr. Kumler testified that lateral epicondylitis is usually caused by repetitive activity and that it was "a possibility" that repetitive work activities caused appellant's injuries. However, Dr. Kumler further testified that he could not testify within a reasonable degree of medical probability that repetitive work activities caused appellant's injury. Despite this general testimony that repetitive activity could cause lateral epicondylitis, none of the experts—including appellant's own expert witness—testified to a reasonable degree of medical certainty that repetitive activity at work caused appellant's injury.

{¶ 12} It is clear that appellant's primary theory was that a single incident—striking his elbow on a car fender—caused his injuries. The theory of repetitive-use causation appears at best to be an alternative theory, and appellant submitted minimal evidence to support the theory. This stands in marked contrast to a case like *Murphy*, where the claimant was entitled to a requested instruction because she presented medical expert testimony supporting that theory. Thus, although the trial court submitted interrogatories that effectively limited the jury to considering single-incident causation when appellant also pleaded repetitive-use causation, the trial court did not err in so doing because, based on the evidence presented, reasonable minds could not have concluded that appellant's injuries were caused by repetitive use.

{¶ 13} Accordingly, appellant's first three assignments of error are without merit and are overruled.

{¶ 14} Appellant's fourth assignment of error asserts that the trial court erred in denying appellant reimbursement for the costs of the stenographic depositions of the testifying physicians. At oral argument, counsel for BWC conceded that the trial court should have granted appellant reimbursement for the costs of stenographic depositions of the testifying physicians. Only RJ Wheels contests this assignment of error.

{¶ 15} Following the trial, appellant and RJ Wheels submitted proposed judgment entries. RJ Wheels' proposed judgment entry provided that all costs of the action were to be paid by appellant. Appellant's proposed judgment entry requested reimbursement from BWC for the costs of deposition transcripts for Dr. Anderson, Dr. Gutheil, and Dr. Kumler.[1] The trial court's judgment entry provided that the costs of the case were to be paid by appellant and included no provision for reimbursement for any deposition costs.

{¶ 16} The statute governing reimbursement for deposition costs in a workers' compensation appeal provides:

The bureau of workers' compensation shall pay the cost of the stenographic deposition filed in court and of copies of the stenographic deposition for each party from the surplus fund and charge the costs thereof against the unsuccessful party if the claimant's right to participate or continue to participate is finally sustained or established in the appeal. * * *

R.C. 4123.512(D).

{¶ 17} RJ Wheels claims that a plain reading of the statute dictates that reimbursement of a claimant's deposition costs is contingent on a successful appeal. It argues that the clause "if the claimant's right to participate or continue to participate is finally sustained or established in the appeal" applies to the entire reimbursement provision.

{¶ 18} RJ Wheels' position is contrary to the Supreme Court of Ohio's interpretation of the statute. In *Akers v. Serv–A–Portion, Inc.* (1987), 31 Ohio St.3d 78, 31 OBR 190, 508 N.E.2d 964, the Supreme Court found that a predecessor version of the statute required that "[t]he stenographic and reproduction costs of depositions are to be paid from the Industrial Commission surplus fund under the 'cost of the deposition' provision of R.C. 4123.519 whether

---

1. We note that RJ Wheels' notice of supplemental authority states that appellant did not request reimbursement for the cost of the deposition of his own testifying physician, Dr. Anderson. Reviewing appellant's motion to approve the proposed judgment entry, it appears that appellant's initial proposed judgment entry included a request for reimbursement for the costs of appellant's own deposition but a later revision deleted that request and sought reimbursement for Dr. Anderson's deposition. On remand, the trial court may seek further clarification from the parties and additional filings or documentation to determine the correct costs, if needed.

or not the claimant successfully establishes a right to participate under the Workers' Compensation Act." *Akers* at syllabus. The Supreme Court explained that in all cases deposition costs were to be paid from the surplus fund and that the clause "if the claimant's right to participate * * * is finally sustained or established" only conditioned when the unsuccessful party would be required to reimburse the surplus fund for those costs. Id. at 79–80. In *Cave v. Conrad* (2002), 94 Ohio St.3d 299, 762 N.E.2d 991, the Supreme Court of Ohio affirmed the holding of *Akers* under the current version of the statute and explicitly stated that, under R.C. 4123.512(D), "a claimant never bears responsibility for stenographic deposition costs, regardless of the outcome of his or her claim." Id. at 301.

{¶ 19} In its notice of supplemental authority, RJ Wheels asserts that appellant would be entitled to reimbursement for the costs of only his own doctor's deposition, citing *Kilgore v. Chrysler Corp.* (2001), 92 Ohio St.3d 184, 749 N.E.2d 267, and *Wasinski v. Pelco II, Inc.*, 189 Ohio App.3d 550, 2010-Ohio-4293, 939 N.E.2d 883. Although it is correct that the *Kilgore* decision held that "win or lose, a claimant may recover the costs of his own doctor's deposition if the deposition is filed with the court," *Kilgore* at 186, that decision did not limit reimbursement to only the deposition costs of the claimant's own physician. Moreover, both *Kilgore* and *Wasinski* turned on analysis of R.C. 4123.512(F), rather than R.C. 4123.512(D). R.C. 4123.512(F) permits reimbursement for a broader category of costs than R.C. 4123.512(D), but recovery of those costs is contingent on a successful appeal. *Kilgore* at 186–187. Neither of the decisions RJ Wheels cites contradicts the decisions in *Akers* and *Cave* providing for reimbursement of a claimant's deposition costs regardless of the success of his appeal.

{¶ 20} Based on the guiding precedent in *Akers* and *Cave,* the trial court erred in denying reimbursement for appellant's deposition costs. Appellant's fourth assignment of error is sustained.

{¶ 21} For the foregoing reasons, appellant's first, second, and third assignments of error are overruled, and his fourth assignment of error is sustained. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded to that court for determining reimbursement for appellant's deposition costs.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

BRYANT, P.J., and FRENCH, J., concur.