[Cite as *State ex rel. Agustin v. Tepe*, 2013-Ohio-5600.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel.                                    :
Milton Estuardo Ramos Agustin,
                                                 :
          Relator,
                                                 :
v.                                                       No. 12AP-972
                                                 :
Gregory H. & Mark A. Tepe,                               (REGULAR CALENDAR)
Tepe Environmental Services, LTD.,               :
and Industrial Commission of Ohio,
                                                 :
          Respondents.
                                                 :

D E C I S I O N

Rendered on December 19, 2013

*Evans Law Office,* and *Marquette D. Evans,* for relator.

*Michael DeWine*, Attorney General, and *Corinna V. Efkeman,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

SADLER, J.

{¶ 1}   In this original action, relator, Milton Estuardo Ramos Agustin, requests a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying him permanent total disability ("PTD") compensation and to enter an order granting said compensation.

## I.  BACKGROUND

{¶ 2}   Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings

of fact and conclusions of law, which is appended hereto. The magistrate concluded that, when addressing relator's non-medical factors, the commission abused its discretion by considering statements of relator's counsel as evidence. Accordingly, the magistrate recommended that this court grant a writ of mandamus ordering the commission to vacate its staff hearing officer's ("SHO") order of January 31, 2011, as to the analysis or explanation of the non-medical factors and to enter an amended order consistent with the magistrate's decision.

## II. OBJECTIONS

### A. Relator's Objection

> The Magistrate erred in failing to enter an order directing the Industrial Commission to award Relator permanent and total disability compensation pursuant to *State, ex rel. Gay v. Mihm*, (1994), 68 Ohio St.3d 315.

### B. The Commission's Objection

> The magistrate erred in concluding that the commission abused its discretion by referencing "testimony" of counsel in its decision to deny PTD benefits to Ramos Agustin.

## III. DISCUSSION

{¶ 3} In the January 31, 2011 order, the SHO concluded that, when relator's impairments arising out of the allowed condition were considered in conjunction with relator's non-medical disability factors, relator was not entitled to PTD compensation. In his brief to the magistrate, relator challenged the SHO's reliance on what the SHO termed to be counsel's testimony indicating that relator was "not interested" in obtaining a work visa. As the magistrate's decision indicates, though stating in the order that relator's counsel "testified" at the January 31, 2011 hearing, there is no evidence indicating counsel was actually sworn in and gave testimony at the hearing. Presuming the SHO was referring to counsel's "statements" at the hearing, rather than actual testimony, the magistrate correctly noted that statements of counsel are not evidence. (Magistrate's Decision, ¶ 37.) This was the basis for the magistrate's recommendation that a limited writ of mandamus be issued so that the commission could enter a new order with an appropriate analysis of relator's non-medical factors.

{¶ 4}   In relator's objection, he asserts the appropriate remedy is not to issue a limited writ of mandamus ordering the commission to re-address the issue of non-medical factors but, rather, is to issue a full writ of mandamus ordering the commission to grant relator PTD compensation.  In support, relator relies on *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994), which found that, "where the facts of the case indicate that there is a substantial likelihood that a claimant is permanently and totally disabled, courts are not and will not be precluded from ordering the [commission], in a mandamus action, to award [PTD]."  *Id.* at 323.   Such relief, however, should be only awarded in extraordinary circumstances.  *State ex rel. Pass v. C.S.T. Extraction Co.*, 74 Ohio St.3d 373, 376 (1996).

{¶ 5}   In the present case, there are no such extraordinary circumstances to warrant *Gay* relief as requested by relator.  As the magistrate's decision concludes, the SHO based its decision in significant part on what the SHO referred to as testimony of counsel.  Yet, relator's counsel states no such testimony was provided, and there is no evidence in the record that counsel was actually sworn in and provided such testimony.  As the magistrate's decision demonstrates, this record is not one in which, absent the challenged "evidence," analysis of non-medical factors in conjunction with relator's impairments would necessarily result in a finding of PTD.  Thus, *Gay* relief is not warranted in this case, and relator's objection is overruled.

{¶ 6}   The commission argues that, rather than issue a limited writ of mandamus, this court should simply deny the requested writ of mandamus.  According to the commission, the magistrate inappropriately focused on the word "testimony" to reach his conclusion that a limited writ is warranted.  We disagree.

{¶ 7}   As set forth extensively in the magistrate's decision, the basis for the SHO's analysis, with respect to relator's non-medical factors, appears to turn on what the SHO indicated was testimonial evidence that relator was "not interested in obtaining a work visa."  The SHO's order states the SHO found relator had not made diligent and sincere attempts to undergo vocational rehabilitation based upon the fact that relator "has no interest" in obtaining a work visa.  The SHO proceeds to state, "[i]mportantly, [relator] has failed to set forth any reason as to why he is not interested in obtaining a work visa, even if he only obtained it for the purposes of participating in vocational rehabilitation."

Thus, the SHO's order regarding non-medical factors is premised in large part on a factual finding that has no evidentiary support.

{¶ 8} Though contending a limited writ of mandamus is not necessary, the commission does not direct us to any evidence in the record that would necessarily compel, in the absence of the alleged testimonial evidence, the commission's denial of relator's application for PTD. "Where there is no evidence upon which the commission could have based its factual conclusion an abuse of discretion is present and mandamus becomes appropriate." *State ex rel. Kramer v. Indus. Comm.*, 59 Ohio St.2d 39, 42 (1979). The commission, as the ultimate evaluator of non-medical vocational factors, is entitled to independently weigh the evidence and reach its own conclusion. *State ex rel. Jackson v. Indus. Comm.*, 79 Ohio St.3d 266, 270 (1997).

{¶ 9} Accordingly, we overrule the commission's objection to the magistrate's decision.

## IV. CONCLUSION

{¶ 10} Upon review of the magistrate's decision, an independent review of the record, and due consideration of the objections presented by relator and the commission, we find that the magistrate has properly stated the pertinent facts and applied the appropriate law. Therefore, we overrule both the commission's and relator's objections to the magistrate's decision and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. Accordingly, we issue a limited writ of mandamus ordering the commission to vacate its SHO's order of January 31, 2011 as to the analysis and explanation of non-medical factors and to enter an amended order consistent with this decision.

*Objections overruled;*
*limited writ of mandamus granted.*

DORRIAN and O'GRADY, JJ., concur.

_____

# A P P E N D I X

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel.<br>Milton Estuardo Ramos Agustin, | : | |
| | : | |
| Relator, | : | |
| | : | No.  12AP-972 |
| v. | | |
| | : | (REGULAR CALENDAR) |
| Gregory H. & Mark A. Tepe,<br>Tepe Environmental Services, LTD.,<br>and Industrial Commission of Ohio, | : | |
| | : | |
| Relator, | | |
| Respondents. | : | |
| | : | |

---

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on July 31, 2013

---

*Evans Law Office,* and *Marquette D. Evans,* for relator.

*Michael DeWine*, Attorney General, and *Corinna V. Efkeman,* for respondent Industrial Commission of Ohio.

---

## IN MANDAMUS

{¶ 11} In this original action, relator, Milton Estuardo Ramos Agustin, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation, and to enter an order granting the compensation.

Findings of Fact:

{¶ 12} 1. On September 4, 2008, relator sustained an industrial injury while employed as a laborer for respondents Gregory H. & Mark A. Tepe, Tepe Environmental Services, Ltd., a state-fund employer.

{¶ 13} 2. On September 4, 2008, while planting trees, relator was thrown from a bobcat and ran over by the bobcat.

{¶ 14} 3. The industrial claim (No. 08-854045) is allowed for:

> Fracture tibia shaft-open, left; fracture of pubis-closed, left; fracture six left ribs-closed; fracture one right rib-closed; left sacroiliac joint diastasis; brachial plexopathy; depressive disorder; anxiety state; lumbar radiculopathy; right shoulder sprain; cervical sprain; trapezial sprain.

{¶ 15} 4. On September 18, 2009, at the request of the Ohio Bureau of Workers' Compensation ("bureau"), relator was examined by Robert L. Boyer, M.D. In his seven-page narrative report, Dr. Boyer opined:

> The claimant is at a treatment plateau and appears to be at [maximum medical improvement] for all of the allowances.
>
> The claimant clearly cannot return to a labor intensive place of employment.
>
> The claimant is theoretically capable of remunerative employment. There obviously is a language barrier. He would be capable of utilizing his left upper extremity without restrictions. He would only be capable of standing for 20 to 30 minutes at a time. Thereafter, he would need to sit for approximately five minutes. He would have a lifting limit of 10 lbs. which should be performed above the horizontal plane relative to the waist.
>
> The claimant appears to be at MMI as previously described. The physician of record has submitted a C-9 document on 9-30-09 requesting Vocational Rehabilitation. A repeat IME is not indicated since the claimant is at MMI.
>
> The claimant is currently receiving physical therapy which is certainly necessary and appropriate at this time juncture[.]
>
> This examiner is in agreement with the planned vocational rehabilitation.

{¶ 16} 5. On April 21, 2010, the bureau issued a "Vocational Rehabilitation Closure Report" on form RH-21. The completed form states in part:

> The above [Injured Worker] was referred for [vocational rehabilitation] services on 10/05/09 and assigned to this

case manager (CM) on 10/06/09. * * * The [Injured Worker] stated that he sustained his work related injuries on 09/04/08 while working as a landscaper for employer of record (EOR) Tepe Landscape & Design Company. The EOR, Greg Tepe, Owner of Tepe Landscape & Design Company informed CM on 10/29/09 that the [Injured Worker] currently only has a Medical/Visitor visa and that his Work Visa expired post his work related injury and that he cannot [return to work] in any capacity in the USA. [Injured Worker] indicated to the CM at the initial assessment on 10/15/09 that he intends to go back to his homeland in Guatemala post completion of his [vocational rehabilitation] therapy program.

CM met with the [Injured Worker] and Dr. James Lutz, M.D. associate of [physician of record], Dr. Daniel Buchanan, D.C., for pain management on 2/22/10. Dr. Lutz reviewed the bi-weekly progress reports from Sports Therapy dated 2/17/10 and was in agreement with therapist's recommendation that no further work hardening beyond the remaining three weeks (total four weeks) through 3/10/01 [sic] would be appropriate. A Medco 14 was completed by the doctor to continue with the remaining work hardening sessions 5x/week and obtain an [functional capacities evaluation] to determine the [Injured Worker's] current physical demand level. CM to follow up with [physician of record], on 3/9/10 for review of the FCE and final [return to work] release with restrictions.

CM met with the [Injured Worker] and physical therapist, Cyndi Lewis, MSPT on 3/03/10 and observed the [Injured Worker] while participating in his FCE. Therapist indicated that the [Injured Worker] was doing well in all aspects of his activities except in reaching out and lifting/carrying objects up and overhead. CM met with the [Injured Worker] and [physician of record] on 3/9/10 for final follow up. The [Injured Worker] was accompanied by Maria, a relative of the family with whom he now lives and who speaks fluent English and Spanish. CM presented the [physician of record] with a copy of the completed FCE from Sports Therapy dated 3/3/10 and he reviewed it. He also examined the [Injured Worker] and submitted the a [sic] Medco 14 releasing the [Injured Worker] to [return to work] on 3/11/10 with permanent restrictions as indicated by the physical therapist at the Light-Medium PDC level.

His friend, Maria, inquired if any re-training would be possible as the [Injured Worker] would not be able to go back to Guatemala to work as a construction worker which would be the only job available to him. CM advised that she had previously staffed the file with the DMC regarding his [return to work] options and was advised that he had completed all appropriate services, but without a work visa for the USA, any training or job search would not be appropriate at this time.

CM received support of file closure from the DMC the same day indicating also that if the [Injured Worker] is able to obtain a work visa for the USA or other documentation to support his ability to legally stay and work in the USA, then further consideration for [vocational rehabilitation] may be considered.

* * *

CM received and reviewed the vocational evaluation from Mr. Phillips on 4/19/10 and faxed a copy of the evaluation to all parties. CM staffed file with CareWorks case specialist Genie Braithwaite and DMC, Amy H., on 4/20/10 whereby the DMC recommended to close the [Injured Worker's] vocational rehab file as it was felt there were no further vocational rehabilitation services that could be provided the [Injured Worker] based on the results of the vocational evaluation which indicated that the [Injured Worker] was not appropriate for re-training due to his lack of academics in Spanish and English, does not have the transferable skills within his current physical demand level of Light to Medium strength range, and is non-employable as he does not have a work visa to work in the USA. Case specialist notified CM on 4/21/10 that she was in agreement with recommendation and CM was given clearance to go forward with closure of this file effective 4/21/10.

{¶ 17} 6. On May 18, 2010, at relator's request, he was examined by Bruce F. Siegel, D.O. In his three-page narrative report, Dr. Siegel concludes:

[I]t is my medical opinion due to these injuries that he is permanently unable to perform manual labor and is physically able to perform only sedentary or stationary type of employment where he is able to change positions as he feels is needed to accommodate his conditions.

{¶ 18} 7. At relator's request, vocational expert William T. Cody prepared a vocational assessment or report. Cody interviewed relator on July 21, 2010. Thereafter, Cody issued a six-page narrative report in which he opines:

> Mr. Ramos would be unable to adapt to a new kind of work activity. He has a significant level of pain, a restricted manual trade work history, a limited level of education in a foreign country, a lack of fluency in English, and physical restrictions. Under these circumstances he could not be expected to adequately adapt to the new tools, tasks, procedures, and rules involved in performing a new type of work activity, a type of work that he has not performed in the past. This holds true even for unskilled work. When a significant level of pain is combined with; physical restrictions, limited education, lack of ability to communicate in English, and a manual trade work history, they serve as contributing factors to an inability to make vocational adjustments.
>
> Therefore, in the opinion of this vocational expert, Milton Ramos is permanently and totally occupationally disabled. That is, there are no jobs in the local or national economies that he is able to perform. This conclusion was reached considering his age, limited education, lack of ability to speak English with any degree of fluency, manual trade work history, and the physical limitations that he has as a result of his allowed injury, claim number 09-854045. This opinion only considered his physical condition. The existence of psychological limitations stemming from allowed conditions can only support his permanent and total disability.

{¶ 19} 8. On August 20, 2010, relator filed an application for PTD compensation.

{¶ 20} 9. On October 4, 2010, at the commission's request, relator was examined by Ron M. Koppenhoefer, M.D. In his five-page narrative report, Dr. Koppenhoefer opines:

> **Discussion:** Based on my examination, it is my medical opinion that Mr. Agustin has reached maximum medical improvement for the allowed conditions in this claim. My rationale is based on his current symptomatology as well as his past medical treatment and the diagnostic studies quoted.

When using the AMA Guides Fifth Edition, he would have the following degree of impairment related to the allowed conditions in this claim:

[One] Fracture tibia shaft-open left - 1% impairment for residual discomfort.
[Two] Fracture six left ribs-closed, fracture one right rib-closed - 1% impairment for residual discomfort.
[Three] Fracture of pubis-closed left - 0% impairment to the body as a whole. Table 17-33 was consulted in this regard.
[Four] Left sacroiliac joint diastasis - 3% impairment when consulting Table 17-33.
[Five] Brachial plexopathy would equal to a 10% impairment of the upper extremity. Table 16-15, Table 16-34 was consulted in this regard. This would correlate to a 6% impairment to the body as a whole when using Table 16-3.
[Six] Lumbar radiculopathy would equal to a DRE Lumbar Category 2 degree impairment or a 5% impairment to the body as a whole.

The combined values chart would equal the above to a 15% impairment to the body as a whole.

Based on my examination, I believe Mr. Agustin would be limited in regards to his work abilities. These limitations would be based on the allowed conditions pertaining to his sacroiliac joint diastasis. I believe he would be limited in regards to performing stooping or prolonged bending activities as well as repetitive bending or lifting activities. His brachial plexopathy and his lumbar radiculopathy would not be work limiting at this time except for the possibility of significant endurance activities involving his right arm.

Attached is the Physical Strength Rating which I believe indicates his work capabilities. I believe he could perform sedentary and light duty work activity at this time if repetitive bending and stooping activities are not part of his job duties.

{¶ 21} 10. Following a January 31, 2011 hearing, a staff hearing officer ("SHO") issued an order denying the PTD application. The SHO's order explains:

The Staff Hearing Officer has reviewed all medical and vocational evidence on file, as well as that submitted at hearing, and bases this decision on the evidence and reasons cited in the following order.

After full consideration of the issue, it is the order of the Staff Hearing Officer that the Injured Worker's IC-2 Application for Permanent and Total Disability Compensation, filed 8/20/2010, be denied.

The Injured Worker is a 22 year old male who has one Workers' Compensation claim. This claim, claim number 08-854045, is predicated upon an industrial accident which occurred on 9/4/2008 when the Injured Worker was inadvertently thrown out of and then run over by a bobcat. As a result of this incident, the Injured Worker sustained injuries to his left leg, pubis, left ribs, right ribs, low back and chest. This claim also has a psychological component.

Although this claim has a psychological component, Injured Worker's counsel requested that the application be processed without considering the allowed psychological conditions. Accordingly, this order considers only the allowed physical conditions.

Dr. Ron Koppenhoefer examined the Injured Worker on 10/4/2010 at the request of the Industrial Commission. Dr. Koppenhoefer examined the Injured Worker on the allowed physical conditions and concludes that the allowed physical conditions have reached maximum medical improvement.

Dr. Koppenhoefer further opines that the Injured Worker retains the functional capacity to perform light work when the impairments arising from the allowed physical conditions are considered. Light work includes the ability to exert 20 pounds of force one-third of the time, 10 pounds of force two-thirds of the time and negligible force constantly. Light work may also include jobs which require walking or standing to a significant degree and jobs which require working at a production rate.

Dr. Robert Boyer examined the Injured Worker on 9/18/2009 at the request of the Bureau of Workers' Compensation. Dr. Boyer examined the Injured Worker on the allowed physical conditions and concludes that the allowed physical conditions have reached maximum medical improvement.

Dr. Boyer further indicates that the Injured Worker is capable of performing sustained remunerative employment with the limitations that the Injured Worker cannot engage

in labor intensive work. Dr. Boyer also indicates that the Injured Worker is limited to standing for no more than 20 to 30 minutes at a time before requiring the ability to sit for 5 minutes. Dr. Boyer also imposes a 10 pound lifting limit.

The Staff Hearing Officer finds that all allowed physical conditions have reached maximum medical improvement based upon the reports of Dr. Koppenhoefer and Dr. Boyer.

The Staff Hearing Officer further find that the Injured Worker retains the functional capacity to perform sustained remunerative employment when the impairments arising out of the allowed physical conditions are considered based upon the reports of Dr. Koppenhoefer and Dr. Boyer.

Additionally, when the Injured Worker's impairments arising out of the allowed conditions are considered in conjunction with the Injured Worker's non-medical disability factors, the Staff Hearing Officer finds that the Injured Worker retains the functional capacity to perform sustained remunerative employment and is therefore not permanently and totally disabled.

The Staff Hearing Officer finds that the Injured Worker's age, 22 years old, is not a barrier to re-employment. Individuals of the Injured Worker's age expect to remain in the work force a number of years. Additionally, individuals of the Injured Worker's age have the ability to pursue the acquisition of new job skills, through short-term or on the job training, which would enhance the Injured Worker's potential for re-employment. Further, individuals of the Injured Worker's age have the ability to pursue formal vocational training or additional education which would enhance the Injured Worker's potential for re-employment.

The Staff Hearing Officer finds that the Injured Worker's IC-2 Application for Permanent and Total Disability indicates that the Injured Worker has a very limited work history. Specifically, the Staff Hearing Officer finds that the Injured Worker has not worked in any capacity since 2008, at which time he was 20 years old. Because the Injured Worker has such a limited work history, the Staff Hearing Officer finds that the Injured Worker does not have a work history, or transferable skills to evaluate. Accordingly, the Staff Hearing Officer finds that the Injured Worker's work history constitutes neither a positive nor negative vocational asset.

The Staff Hearing Officer finds that the Injured Worker has a 6th grade education obtained in Guatemala. The Staff Hearing Officer further finds that the Injured Worker does not speak English and is unable to read and write English. The Staff Hearing Officer finds that the Injured Worker's inability to read and write or speak English and his lack of education constitute a significant barrier to re-employment.

However, the Staff Hearing Officer finds that the Injured Worker is only 22 years of age. As such, the Staff Hearing Officer finds that the Injured Worker has the time and ability to learn English and pursue further education. Accordingly, the Staff Hearing Officer finds that the Injured Worker's inability to speak, read and write English and his lack of education constitute barriers that the Injured Worker has the opportunity to eliminate.

At hearing, the Injured Worker testified that he has only recently enrolled himself in English classes. The Staff Hearing Officer finds that it would be premature to find the Injured Worker's inability to speak, read and write English and his lack of education permanent barriers to the Injured Worker's re-entering the work force until such time as the Injured Worker makes a diligent attempt to speak, read and write English and pursue some type of further vocational training or education. The Staff Hearing Officer finds this particularly significant in light of the Injured Worker's young age.

State ex rel. Cunningham v. Indus. Comm. (2001) 91 Ohio St.3d 261, sets forth the proposition that the Commission may consider all possible skills which may reasonably be developed to enhance the Injured Worker's ability to return to the work force. In the case at hand, the Staff Hearing Officer finds that an individual of the Injured Worker's age has numerous opportunities, both educationally and vocationally, to develop additional skills which would enhance his ability to compete in the work force.

The Staff Hearing Officer finds that the Injured Worker has attempted to participate in vocational rehabilitation one time. However, the Bureau of Workers' Compensation rehabilitation closure report dated 4/21/2010 indicates that the Injured Worker is not feasible to participate in vocational rehabilitation primarily because the Injured Worker does not have a work visa. Further, Injured Worker's counsel testified

that the Injured Worker has extended his time to remain in the United States by way of a tourist visa. Injured Worker's counsel testified that the Injured Worker is not interested in obtaining a work visa because the Injured Worker plans on returning to Guatemala. Because the Injured Worker has indicated that he has no interest in obtaining a work visa, the Staff Hearing Officer finds that the Injured Worker has not made a diligent and sincere attempt to participate in vocational rehabilitation.

Importantly, the Injured Worker has failed to set forth any reason as to why he is not interested in obtaining a work visa, even if he only obtained it for the purposes of participating in vocational rehabilitation. There is no evidence indicating that obtaining a work visa would hinder the Injured Worker's ability to return to Guatemala in any way.

Based on these facts, the Staff Hearing Officer finds that the Injured Worker's non medical disability factors fail to establish that the Injured Worker is permanently incapable of engaging in sustained remunerative employment.

Further, when the Injured Worker's non-medical disability factors are considered in conjunction with the Injured Worker's physical impairments arising out of the allowed conditions, the Staff Hearing Officer finds that the Injured Worker retains the functional capacity to perform sustained remunerative employment and is therefore not permanently and totally disabled.

Accordingly, the Injured Worker's IC-2 Application for Permanent Total Disability, filed 08/20/2010 is denied.

This order is based upon the reports of Dr. Boyer dated 9/18/2009, Dr. Koppenhoefer dated 10/4/2010 and the non-medical disability factors.

{¶ 22} 11. On November 19, 2012, relator, Milton Estuardo Ramos Agustin, filed this mandamus action.

Conclusions of Law:

{¶ 23} The commission, through its SHO, relied upon the reports of Drs. Boyer and Koppenhoefer in determining "residual functional capacity." Ohio Adm.Code 4121-3-34(B)(4).

{¶ 24} Dr. Boyer stated that relator "is theoretically capable of remunerative employment." Dr. Koppenhoefer opined that relator is medically able to "perform sedentary and light duty work activity at this time if repetitive bending and stooping activities are not part of his job duties."

{¶ 25} Here, relator does not seriously challenge the commission's reliance upon the reports of Drs. Boyer and Koppenhoefer. In fact, relator concedes that he "is operating under permanent physical limitations which will confine him to sedentary, or possibly light, physical activities for the remainder of his life." (Relator's brief, at 8.)

{¶ 26} However, relator does challenge the commission's analysis of the non-medical factors.

{¶ 27} According to the bureau's April 21, 2010 closure report, relator began participation in a bureau sponsored vocational rehabilitation plan in early October 2009.

{¶ 28} However, in late October, relator's employer informed the rehabilitation manager ("CM") that relator's "Work Visa" had expired after the September 4, 2008 industrial injury, and that relator was currently residing in this country on a "Medical/Visitor visa" that did not permit him to work in any capacity in this country. Relator informed his CM that he intended to return to Guatemala after completion of his vocational rehabilitation program.

{¶ 29} In February 2010, the CM met with relator's physician of record James T. Lutz, M.D., for a review of the bi-weekly therapy reports. Apparently, relator was under-going "work hardening" which Dr. Lutz had approved.

{¶ 30} In March 2010, the CM met with the physical therapist who indicated that relator "was doing well in all aspects of his activities except in reaching out and lifting/carrying objects up and overhead."

{¶ 31} By late April 2010, the CM concluded that the vocational rehabilitation plan should be closed. The April 21, 2010 closure report identifies three reasons for closure: (1) "lack of academics in Spanish and English"; (2) a lack of "transferable skills"; (3) the lack of a "work visa."

{¶ 32} The April 29, 2010 letter to relator from the CM indicates only one reason for closure, i.e., "[n]on-employable due to expired work visa."

{¶ 33} In his order, the SHO heavily relies upon his finding that relator "is not interested in obtaining a work visa." This finding is said to be premised solely upon the testimony of relator's counsel. The SHO's order again states:

> The Staff Hearing Officer find that the Injured Worker has attempted to participate in vocational rehabilitation one time. However, the Bureau of Workers' Compensation rehabilitation closure report dated 4/21/2010 indicates that the Injured Worker is not feasible to participate in vocational rehabilitation primarily because the Ijured Worker does not have a work visa. Further, Injured Worker's counsel testified that the Injured Worker has extended his time to remain in the United States by way of a tourist visa. Injured Worker's counsel testified that the Injured Worker is not interested in obtaining a work visa because the Injured Worker plans on returning to Guatemala. Because the Injured Worker has indicated that he has no interest in obtaining a work visa, the Staff Hearing Officer finds that the Injured Worker has not made a diligent and sincere attempt to participate in vocational rehabilitation.

{¶ 34} Significantly, in this action, relator's counsel denies that he so testified:

> The SHO first indicated that counsel "testified" that the Relator was not interested in obtaining a work visa. Current counsel was counsel at the PTD hearing and provided no testimony. No one, including counsel, expressed any indication of a lack of interest in changing Mr. Ramos' status to one which would give him access to employment authorization.

(Relator's brief, at 10.)

{¶ 35} Significantly, the commission's brief fails to address the issue raised regarding the SHO's stated reliance upon testimony of counsel.

{¶ 36} The January 31, 2011 hearing was not recorded, so we do not have a transcript of the proceedings. We do not know precisely what counsel may have said at the hearing. We do know that the SHO thought that he heard relator's counsel state that relator was not interested in renewing his work visa or obtaining a new work visa.

{¶ 37} There is no evidence in the record indicating that relator's counsel was actually sworn and then gave testimony at the January 31, 2011 hearing. However, the SHO's order does indicate that relator and his counsel appeared at the hearing. Given that scenario, the SHO's remark that "Injured Worker's counsel testified" must be viewed as a misstatement of what actually occurred at the hearing. Presumably, the SHO's order is referring to counsel's statements at the hearing. Statements of counsel are not evidence upon which the SHO can rely. *State ex rel. Reichard v. RJ Wheels, Inc.,* 193 Ohio App.3d 334, 2011-Ohio-1597.

{¶ 38} The record is silent as to whether relator was even eligible for renewal of his work visa. Lack of eligibility may explain the alleged lack of interest in obtaining another work visa.

{¶ 39} In any event, it is clear that there is no evidence to support the SHO's finding that relator "has no interest in obtaining a work visa."

{¶ 40} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its SHO's order of January 31, 2011 as to the analysis or explanation of the non-medical factors, and to enter an amended order consistent with this magistrate's decision.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).