[Cite as *State v. Brown*, 2014-Ohio-1409.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. W. Scott Gwin, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J. |
| | Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 13 CA 43 |
| SHANE BROWN | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common
                             Pleas, Case No.  12 CR 692H


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      April 2, 2014


APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JAMES J. MAYER, JR.                   ROBERT GOLDBERGER
PROSECUTING ATTORNEY                  10 West Newlon Place
JILL M. COCHRAN                       Mansfield, Ohio  44902
ASSISTANT PROSECUTOR
38 South Park Street
Mansfield, Ohio  44902

*Wise, J.*

{¶1}    Appellant Shane Brown appeals his conviction and sentence entered in the Richland County Court of Common Pleas on one count each of aiding and abetting the following: possession of heroin, trafficking in heroin in a school zone, receiving stolen property, and possession of a schedule IV controlled substance, following a jury trial.

{¶2}    Appellee is State of Ohio.

### STATEMENT OF THE FACTS AND CASE

{¶3}    On September 23, 2012, Henry Conley broke into the home of Floyd Shaw, located at 7 Grove Avenue, in Shelby, Ohio, while Mr. Shaw was attending church. (T. at 102-103). Items stolen from the Shaw residence included a .45 caliber handgun, approximately a hundred dollars in miscellaneous change, a few two-dollar bills, and some collectible coins, notably a Canadian dollar and several golden dollar pieces. (T. at 102-104).

{¶4}    Shelby Police were contacted later that day by Ron Hamilton. Mr. Hamilton told police that Mr. Conley had contacted him in attempts to sell a Colt .45 1911 handgun for One Hundred Dollars ($100.00). Mr. Hamilton believed the gun to be stolen as the value of the same was close to One Thousand Dollars ($1,000.00). Shelby Police arranged for Mr. Hamilton to purchase the gun from Mr. Conley. Mr. Conley was subsequently arrested, and it was determined that the gun he sold to Mr. Hamilton was the one stolen from the Shaw residence. (T. at 121-124).

{¶5}    Mr. Conley admitted to burglarizing Mr. Shaw's residence. When questioned about the other missing items, Mr. Conley told the police that the coins and

the two-dollar bills could be found at the home of Appellant, Shane Brown, at 12 Grove A venue Extension 1. Mr. Conley stated that he had traded the coins to the Appellant for heroin. (T. at 125, 149, 192, 219-220).

{¶6} As a result of the investigation, Mr. Conley was charged with Burglary, and a search warrant was obtained for Appellant's residence for the purpose of locating property from the Shaw burglary. (T. at 124-125, 174). The search warrant was executed the same day. At the time of execution of the warrant, there were four occupants in the residence; the Appellant, his girlfriend, Honnie Muhr, his brother, Roy Brown, and his mother, Loretta Brown. (T. at 128-129, 178). Appellant and Ms. Muhr were located in a bedroom adjacent to the kitchen. *Id*. They were secured and removed from the room. (T. at 129).

{¶7} Appellant was taken out to the front porch to speak to Sergeant Mack of the Shelby Police Department and Lieutenant Coontz from METRICH. After being read his Miranda rights, Appellant agreed to speak to officers. (T. at 129-130, 148, 198). Appellant told Sergeant Mack that police would find the heroin in a pillowcase on the bed in the room where he and Ms. Muhr had been, and that they would find the money from the earlier drug transaction in a locked cabinet of the entertainment center. (T. at 130-131, 282). During questioning, Appellant admitted that he and the others in the home had drug problems. He admitted he was selling heroin to support their habits. Appellant specifically admitted to using the black truck that was sitting out front of the residence to drive down to Columbus to pick up drugs and that sometimes Ms. Muhr would go down to Columbus with him. (T. at 130-132, 148, 199, 201). Usually he would drive to Columbus with another gentleman and purchase $1,000.00 in heroin. The

heroin would then be portioned out with some to use and some to sell. (T. at 199-200,202, 199-200).

{¶8} Police searched the bedroom shared by Appellant and Ms. Muhr and located two pill bottles and a duct tape wallet in a pillowcase on the bed, right where Appellant indicated it would be found. (T. at 131, 230, 252, 282, 284). One of the pill bottles contained forty-five wrapped balloons of what was later determined to be heroin. The other pill bottle contained thirteen balloons. Neither of these pill bottles contained labels. (T. at 230, 269-271). The duct tape wallet contained $863 in cash, including four two-dollar bills. (T. at 126, 150-151, 227, 230-231). Also located in the bedroom was a separate two-dollar bill, a Canadian dollar coin, several golden American dollar coins, and a large amount of other miscellaneous coins, numerous items of drug paraphernalia including syringes, and multiple prescription pill bottles. (T. at 126-127, 221, 230-234). The prescription bottles that were labeled, found in the entertainment center cabinet, bore labels indicating that the prescriptions were old and out of date. (T. at 243-246, 252-254). One of the bottles with no name, contained three orange pills and seven blue pills. (T. at 126, 247-248). The orange pills were identified as Suboxone, and the blue pills were identified as Alprazolam. (T. at 272, 272). Located on Appellant was a wallet with $1,111.00 in cash. (T. at 146-147, 151, 180-182, 189-190).

{¶9} The location of Appellant's home was found to be 961 feet from St. Mary's School using the AccuGlobe software used by the county Auditor and Engineer to measure distances.

{¶10} As a result of the execution of the search warrant, Appellant was charged with Aiding and Abetting Possession of Heroin in an amount greater than fifty unit

doses, a felony of the third degree; Aiding and Abetting Trafficking in Heroin in a school zone in an amount greater than fifty unit doses, a felony of the second degree; Aiding and Abetting Receiving Stolen Property, a misdemeanor of the first degree, and Aiding and Abetting Possession of Schedule IV drug with prior felony drug offense, a felony of the fifth degree. The counts of possession and trafficking in heroin both contained forfeiture specifications for $1,974.00 in cash and Appellant's 1999 Chevy Truck.

{¶11} On November 27, 2013, Appellant was arraigned on the charges.

{¶12} On February 4, 2013, the State of Ohio filed a motion to join the instant case with case number 2012-CR-744H for purposes of trial. Two days later the court scheduled the instant matter for a change of plea on February 22, 2013.

{¶13} On February 7, 2013, Appellant changed his mind about the change of plea, and the cases were joined and set for trial on March 18, 2013.

{¶14} On March 13, 2013, a joint motion to continue was filed by the State and Appellant.

{¶15} A jury trial in the matter commenced on April15, 2013, and ended on April19, 2013.

{¶16} Honnie Muhr and Roy Brown testified on behalf of Appellant. Ms. Muhr, who had already entered guilty pleas to Aiding and Abetting Trafficking and Possession of heroin, testified that all of the heroin and the money located in the pillow case belonged to her. She claimed that she was the drug trafficker in the house, and that Appellant had nothing to do with the sale of drugs. Ms. Muhr admitted Appellant was a heavy heroin user, using approximately four to five balloons of heroin at a time, five times a day. Ms. Muhr testified that her friend Nicky Reisner had delivered to the house

the night before the heroin that the police found. She first indicated she had purchased a couple hundred bucks worth, then changed that to seven or eight hundred dollars worth. The total amount of heroin that was allegedly purchased was eighty balloons. They did not use any of the eighty (80) balloons. Ms. Muhr sold the twenty-two (22) missing balloons for the $863 found in the duct tape wallet.

{¶17} Honnie Muhr denied that Appellant had ever purchased heroin, gave her money to purchase heroin, drove her to purchase heroin, or took part in any transaction involving the sale of heroin. She testified that the coins and two dollar bills in question were brought to the house by Tim West. She claimed that Mr. West came by the house three times that day in order to attempt to purchase heroin from her. She stated that the first time he carne over looking for drugs she did not want to sell him any because he owed her money. She told him that he had to wait until Appellant woke up. She said that Mr. West returned a second time with a handgun which he wanted to trade for drugs. Ms. Muhr and Roy Brown told Mr. West that they did not want him there with the gun. On the third visit, Mr. West brought over the coins and two dollar bills. Ms. Muhr testified that she purchased the coins and two dollar bills from Mr. West for twenty-five dollars ($25.00), despite the fact that Mr. West owed her money. She told the jury Appellant collected coins so she purchased the coins in order to help Mr. West since the man down the street would not take the coins in exchange for drugs. She stated that Appellant slept through all of these visits, never waking until the police arrived to execute the search warrant.

{¶18} Ms. Muhr further testified that she has never sold drugs to Henry Conley and he had never been to the house, but hinted that Tim West was trying to unload the

property for Mr. Conley. The money Appellant had in his wallet, $1,111.00, was a loan he had secured using his truck as collateral and was to pay a past due electric bill of $1,400.00 and a $200.00 water bill. She claims that the police lied about finding syringes in the bedroom. She stated they were all in the living room. The coins she took from Mr. West were all put in a drawer next to her bed. She did not know how they got into the entertainment center where they were located by police. Ms. Muhr was unaware Appellant had talked to the police on the day the search warrant was executed. (T. at 326-386).

{¶19} Roy Brown testified that Tim West had been to the house two times on the day the search warrant was executed. The first time Mr. West had a pistol and was told the leave. The second time he had approximately twenty-five dollars in change and two-dollar bills which Ms. Muhr purchased from him. (T. at 398-400, 402-403). Mr. Brown testified that he was not a heroin user and when pushed on the subject opted to invoke his Fifth Amendment right to not incriminate himself. (T. at 401-402). However, he did testify that Appellant, Ms. Muhr and Loretta Brown were all heroin addicts. (T. at 404-405,408). Mr. Brown did not know how much anyone was using but testified that Appellant was selling in order to take care of his and Ms. Muhr's habit. (T. at 408).

{¶20} Appellant also testified. He admitted to possession of the Alprazolam that was found on his person on October 6, 2012. He denied trafficking. He denied that the money found on his person on September 23, 2012, were proceeds of drug trafficking. Instead he testified that the $1,111.00 he had on him was from his social security that he had just withdrawn. Appellant testified that he receives $795 a month in social security on the third of the month. He claims he also withdrew some money from his

savings account which contained the remainder of his social security settlement. At one point he testified to having close to $20,000.00 left of the settlement and that he usually withdrew an extra $700 a month to supplement his social security check. He subsequently indicated that he only had $3,500.00 left of the settlement. Appellant indicated that he had that much cash on his person on September 23, 2012, because he was interested in purchasing a new vehicle. He stated that he was the only driver in the household and the truck was not sufficient for shuttling everyone around. He testified that this was the same reason that he was in possession of close to $3,500.00 on October 6, 2012, when he was arrested a second time. Appellant indicated that he did have a loan using the truck for collateral, but that had been previously paid off.

{¶21} Appellant denied selling any heroin or even using heroin at the time in question. He stated he had been using the Alprazolam in order to get off of heroin. He testified that all of the drugs belonged to Ms. Muhr and that she was the one selling drugs. He stated that the money in the duct tape wallet also belonged to Ms. Muhr and that he had no knowledge of it. He further stated that he was asleep when Tim West came over to the house and he had no knowledge of the coins or the two-dollar bills. He further testified that his only knowledge of Mr. Conley is that they worked together off and on a few years prior. He also alleged that he was never read his Miranda rights by any police officer. (T. at 410-460).

{¶22} On rebuttal, Tim West testified that he lived next door to Appellant. He was aware of the execution of the search warrant and what was located at the home. He denied taking any money or guns over to the residence on the day in question. He

also denied ever going over to the home to purchase or barter for heroin. (T. at 463-470).

{¶23} Sergeant Mack and Officer Aaron Bushey testified to statements made by Henry Conley to police during their investigation of the Burglary. The only relevant statements testified to by the officers indicated that Mr. Conley had recently relapsed on heroin, and that he purchased all of his heroin in the preceding three days from Appellant. Mr. Conley had told police that he had purchased a balloon that morning from Appellant and used the coins and two-dollar bills for the purchase. Mr. Conley also indicated that the residence contained a lot more heroin. (T. at 492-493, 498-500).

{¶24} On rebuttal, the State introduced a recording that was made in the interview room where Honnie Muhr and Appellant were placed alone after their arrest. It is apparent from the tape that they were aware of the possibility that their conversation was being recorded. As indicated by the State of Ohio in closing arguments, it is apparent from the video that Appellant and Ms. Muhr spent that time together concocting a story and trying to determine who had ratted them out to the police. (T. at 480-483, 519-523).

{¶25} Sergeant Mack testified that St. Mary's School has been in existence for the last thirty to fifty years. (T. at 153-156).

{¶26} Evidence was also presented at trial that Appellant had a prior conviction for possession of heroin, a felony of the fourth degree from Richland County in 2008. He also had a conviction for trafficking in heroin, a fifth degree felony, from Huron County from 2006. (T. at 209-212).

{¶27} After deliberations, the jury found Appellant guilty on all counts and forfeiture specifications.

{¶28} The trial court sentenced Appellant to three (3) years on the charge of possession of heroin while aiding or abetting another, four (4) years mandatory on the charge of trafficking in heroin in a school zone, six (6) months on the charge of receiving stolen property and twelve (12) months on the charge of possession of a schedule IV controlled substance. The possession and trafficking charges were ordered to run consecutively to each other. The remaining counts were ordered to run concurrently to each other and concurrently to case number 12-CR074H, for a total sentence of seven (7) years incarceration.

{¶29} Appellant now appeals to this Court, assigning the following errors for review:

## ASSIGNMENTS OF ERROR

{¶30} "I. APPELLANT WAS IMPROPERLY CONVICTED AND SENTENCED ON COUNTS I AND II OF THE INDICTMENT BECAUSE THEY WERE ALLIED OFFENSES OF SIMILAR IMPORT.

{¶31} "II. THE STATEMENTS MADE BY HENRY CONLEY AS TESTIFIED TO BY OFFICERS MACK AND BUSHEY WAS (SIC) INADMISSIBLE HEARSAY EVIDENCE BECAUSE IT VIOLATED THE CONFRONTATION CLAUSE OF THE SIXTH AMENDMENT.

{¶32} "III. THE COURT IMPROPERLY INSTRUCTED THE JURY ON COUNT II OF THE INDICTMENT.

{¶33} "IV. THE COURT IMPROPERLY INSTRUCTED THE JURY ON COUNT IV OF THE INDICTMENT."

**I.**

{¶34} In his First Assignment of Error, Appellant argues that the trial court erred in not finding that Count I and Count II were allied offenses of similar import. We disagree.

{¶35} Appellant was convicted of both (aiding and abetting) possession of heroin, in violation of R.C. §2925.11(A) and (C)(6)(d) and (aiding and abetting) trafficking in heroin, in violation of R.C. §2925.03(A)(2) and (C)(6)(d).

{¶36} Appellant argues that the two counts should have been merged as allied offenses of similar import.

{¶37} R.C. §2941.25 states as follows:

{¶38} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶39} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶40} In *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the Ohio Supreme Court revised its allied-offense jurisprudence. The *Johnson*

court overruled *State v. Rance,* 85 Ohio St.3d 632, 710 N.E.2d 699 (1999), "to the extent that it calls for a comparison of statutory elements solely in the abstract under R.C. 2941.25." The Court was unanimous in its judgment and the syllabus, "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered. (*State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, overruled.)" However, the Court could not agree on how the courts should apply that syllabus holding. The *Johnson* case lacks a majority opinion, containing instead two plurality opinions, and a separate concurrence in the judgment and syllabus only. *State v. Helms,* 7th Dist. No. 08 MA 199, 2012-Ohio-1147, 2012 WL 966810, ¶ 71 (DeGenaro, J., concurring in part and dissenting in part).

{¶41} Justice Brown's plurality opinion sets forth a new two-part test for determining whether offenses are allied offenses of similar import under R.C. 2941.25. The first inquiry focuses on whether it is possible to commit both offenses with the same conduct. *Id.* at ¶ 48, 942 N.E.2d 1061. It is not necessary that the commission of one offense will *always* result in the commission of the other. *Id.* Rather, the question is whether it is *possible* for both offenses to be committed by the same conduct. *Id.,* quoting *State v. Blankenship,* 38 Ohio St.3d 116, 119, 526 N.E.2d 816 (1988). Conversely, if the commission of one offense will *never* result in the commission of the other, the offenses will not merge. *Johnson* at ¶ 51.

{¶42} If it is possible to commit both offenses with the same conduct, the court must next determine whether the offenses were in fact committed by a single act, performed with a single state of mind. *Id.* at ¶ 49, quoting *State v. Brown,* 119 Ohio St.3d 447, 895 N.E.2d 149, 2008-Ohio-4569, ¶ 50 (Lanzinger, J., concurring in

judgment only). If so, the offenses are allied offenses of similar import and must be merged. *Johnson* at ¶ 50. On the other hand, if the offenses are committed separately or with a separate animus, the offenses will not merge. *Id.* at ¶ 51.

**{¶43}** Under Justice Brown's plurality opinion in Johnson, "the court need not perform any hypothetical or abstract comparison of the offenses at issue in order to conclude that the offenses are subject to merger." *Id.* at ¶ 47, 942 N.E.2d 1061. Rather, the court simply must ask whether the defendant committed the offenses by the same conduct. *Id.*

**{¶44}** Appellant herein was convicted of both possession of heroin, in violation of R.C. §2925.11(A)&(C)(6)(d), and trafficking in heroin, in violation of R.C. §2925.03(A)(2)&(C)(6)(d).

**{¶45}** R.C. §2925.11, <u>Drug Possession Offenses</u>, provides in relevant part:

**{¶46}** "(A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.

**{¶47}** "***

**{¶48}** "(C) Whoever violates division (A) of this section is guilty of one of the following:

**{¶49}** "*** (6) If the drug involved in the violation is heroin or a compound, mixture, preparation, or substance containing heroin, whoever violates division (A) of this section is guilty of possession of heroin. The penalty for the offense shall be determined as follows:

**{¶50}** "***

**{¶51}** "(d) If the amount of the drug involved equals or exceeds one hundred unit

doses but is less than five hundred unit doses or equals or exceeds ten grams but is less than fifty grams, possession of heroin is a felony of the second degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the second degree."

{¶52} R.C. §2925.03, Trafficking Offenses, provides in relevant part:

{¶53} "(A) No person shall knowingly do any of the following:

{¶54} "****

{¶55} "(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

{¶56} "***

{¶57} "(C) Whoever violates division (A) of this section is guilty of one of the following:

{¶58} "(6) If the drug involved in the violation is heroin or a compound, mixture, preparation, or substance containing heroin, whoever violates division (A) of this section is guilty of trafficking in heroin. The penalty for the offense shall be determined as follows:

{¶59} "***

{¶60} "(d) Except as otherwise provided in this division, if the amount of the drug involved equals or exceeds fifty unit doses but is less than one hundred unit doses or equals or exceeds five grams but is less than ten grams, trafficking in heroin is a felony of the third degree, and there is a presumption for a prison term for the offense. If the

amount of the drug involved is within that range and if the offense was committed in the vicinity of a school or in the vicinity of a juvenile, trafficking in heroin is a felony of the second degree, and there is a presumption for a prison term for the offense."

**{¶61}** A person acts knowingly, regardless of his or her purpose, when that person is aware that his or her conduct will probably cause a certain result or will probably be of a certain nature. R.C. §2901.22(B). It is necessary to look at all the attendant facts and circumstances in order to determine if a defendant knowingly possessed a controlled substance. S*tate v. Teamer*, 82 Ohio St.3d 490, 492, 696 N.E.2d 1049(1998).

**{¶62}** Possession "means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Interpreting the meaning of the term "possession," Ohio courts have held possession may be actual or constructive. *See State v. Wolery*, 46 Ohio St.2d 316, 329, 348 N.E.2d 351(1976); S*tate v. Hankerson*, 70 Ohio St.2d 87, 90–1, 434 N.E.2d 1362; *State v. Boyd*, 63 Ohio App.3d 790, 580 N.E.2d 443(1989). To establish constructive possession, the state must prove the defendant was able to exercise dominion or control over the object, even though that object may not be within his immediate physical possession. *Boyd*, *supra*, at 796, 580 N.E.2d 443. Further, it must also be shown that the person was "conscious of the presence of the object." *Hankerson*, *supra*, at 91, 434 N.E.2d 1362.

**{¶63}** In the case at bar, our review leads us to initially conclude that the first question under *Johnson,* i.e., whether it is possible, with the same conduct, to engage in

possession and trafficking would be answered in the affirmative under the circumstances.

**{¶64}** We thus proceed to an examination of the second question under *Johnson,* whether the offenses were in fact committed by a single act, performed with a single state of mind*.* Here, Appellant drove to Columbus to purchase a quantity of heroin large enough to keep some for personal use and allow him to sell the remainder for profit to cover his personal use. After purchasing, and thereby possessing the heroin, Appellant engaged in the further steps of repackaging the heroin into smaller quantities in balloons. Appellant then actually sold some of the heroin in exchange for stolen property. Upon review, we are persuaded that Appellant's actions as charged were not part of the same conduct. We therefore find the trial court did not err in convicting and sentencing Appellant on both of the aforesaid counts.

**{¶65}** Based on the foregoing, we find that the offenses were not allied offenses of similar import and that the trial court did not err in failing to merge the offenses contained in Counts One and Two.

**{¶66}** Appellant's First Assignment of Error is not well-taken and we hereby overrule same.

**II**.

**{¶67}** In his Second Assignment of Error, Appellant argues that the admission of statements made by Henry Conley were inadmissible hearsay and violated the Confrontation Clause. We disagree.

**{¶68}** A defendant's failure to cross-examine a witness does not mean that the witness was not available for such cross-examination or that the Confrontation Clause

has not been satisfied. "[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *State v. Rucker,* 1st Dist. No. C–110082, 2012–Ohio–185; ¶ 37, citing *State v. Lang,* 129 Ohio St.3d 512, 2011–Ohio–4215, ¶ 113; *Crawford v. Washington,* 541 U.S. 36, 59, 124 S.Ct. 1354 (2004). "The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Rucker* at ¶ 37. Thus, any testimonial statements made by A.H. in her interview with Richey did not violate appellant's Confrontational Clause rights because A.H. was available to testify, and did testify, at trial.

**{¶69}** To establish a Confrontation Clause violation, the defendant must show that he was "prohibited from engaging in otherwise appropriate cross-examination" and "[a] reasonable jury might have received a significantly different impression of [the witness's] credibility had [the defendant's] counsel been permitted to pursue his proposed line of cross-examination." *Id.* at 680, 106 S.Ct. 1431, 89 L.Ed.2d 674.

**{¶70}** Initially we note that the record reflects that while Henry Conley was present at trial, the trial court determined he was, in fact, unavailable to testify due to an auto accident which left him an apparent lack of memory as to many of the events in question.

**{¶71}** The State admits in its brief that because Mr. Conley's statements to the police were testimonial in nature, having been made during the course of a police interrogation, the admission of such statements was a violation of Appellant's Sixth Amendment Right to confrontation. The State, however, argues that the trial court's error in admitting such statements was harmless. We agree.

{¶72} Upon review, we find that the complained of statements were introduced on rebuttal to counter statements made by Appellant and his witnesses that the coins and two-dollar bills did not originate from Mr. Conley's house, but were instead brought to the house by Tim West.

{¶73} This testimony showed that Mr. Conley traded stolen property to Appellant for heroin. However, evidence of such exchange was also presented by the police officers who testified as to the results of their investigation and the parameters of their search warrant. The search warrant affidavit, which was entered into evidence, also contained information concerning Mr. Conley's statements that he took the coins/$2 Dollar Bills to Appellant's house and exchanged same for heroin. The officer's testimony was made and the exhibits were introduced without objection.

{¶74} We find that, given all of the evidence presented throughout the trial, along with the cumulative nature of the rebuttal statements, there was more than sufficient evidence to convict Appellant of the counts contained in the indictment and, therefore, the introduction of such statements was harmless error.

{¶75} Appellant's Second Assignment of Error is overruled.

III.

{¶76} In his third assignment of error, Appellant argues that the trial court improperly instructed the jury on Count II. We disagree.

{¶77} While reading the instructions to the jury, the trial court advised the jury as follows:

{¶78} "If the prosecutor did not prove beyond a reasonable doubt all the essential elements of possession of drugs as I have defined them for you, your verdict

must be guilty of that crime. If, on the other hand, you find that the prosecutor failed to prove beyond a reasonable doubt any one of the essential elements of possession of the drugs, your verdict must be not guilty of that crime."

**{¶79}** Appellant did not object to the jury instructions given by the trial court and therefore has waived all but plain error. *State v. Underwood* (1983), 3 Ohio St.3d 12, 444 N.E.2d 1332. Under the plain error standard, first there must be an error, i.e. a deviation from a legal rule. Second, the error must be plain, i.e. an obvious defect in the trial proceedings. Third the error must have affected "substantial rights" i.e. the outcome of the trial. *State v. Johnson,* Franklin App. No. 06AP-878, 2007-Ohio-2792.

**{¶80}** The Ohio Supreme Court has advised that Crim.R. 52(B) plain error is to be taken "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus.

**{¶81}** "A jury charge must be considered as a whole and a reviewing court must determine whether the jury charge probably misled the jury on a matter materially affecting the complaining party's substantial rights." *Becker v. Lake Cty. Mem. Hosp. West* (1990), 53 Ohio St.3d 202, 208, 560 N.E.2d 165.

**{¶82}** Upon review, we find that the written instructions presented to the jury did not contain the above misstatement. Further, this particular instruction of law appears more than once in these jury instructions and was read correctly by the judge in the other instance, which actually was read to the jury before the misstatement.

**{¶83}** This Court finds no evidence that the jurors noticed the trial court's misstatement, that Appellant was prejudiced by same, or that their verdict would have been different in this case.

**{¶84}** Appellant's third assignment of error is overruled.

### IV.

**{¶85}** In his Fourth and final Assignment of Error, Appellant argues that the trial court improperly instructed the jury on Count IV. We disagree.

**{¶86}** At trial, Appellant requested that the trial court instruct the jury on the full definition of "school" and "school premises" as contained in R.C. §2925.01(Q) and (R) as such pertained to Count II. The trial court refused, stating the additional definitions were not relevant to the case at bar. (T. at 583-584). Appellant objected to same.

**{¶87}** The giving of jury instructions is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Martens,* 90 Ohio App.3d 338, 629 N.E.2d 462 (3rd Dist.1993). In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140(1983). Jury instructions must be reviewed as a whole. *State v. Coleman,* 37 Ohio St.3d 286, 525 N.E.2d 792(1988).

**{¶88}** "Error in refusing to give a special request to charge before argument must be prejudicial in order to support reversal of a judgment rendered against a party complaining of such error." *Smith v. Flesher,* 12 Ohio St.2d 107, 233 N.E.2d 137(1967), syllabus. It is well established that the trial court will not instruct the jury where there is no evidence to support an issue. *Riley v. Cincinnati,* 46 Ohio St.2d 287, 75 O.O.2d 331,

348 N.E.2d 135(1976). "In reviewing a record to ascertain the presence of sufficient evidence to support the giving of a[n] * * * instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction." *Murphy v. Carrollton Mfg. Co.,* 61 Ohio St.3d 585, 591, 575 N.E.2d 828, 832 (1991).

{¶89} The relevant definitions are contained in R.C. §2925.01, which provides:

{¶90} "(Q) "School" means any school operated by a board of education, any community school established under Chapter 3314. of the Revised Code, or any nonpublic school for which the state board of education prescribes minimum standards under section 3301.07 of the Revised Code, whether or not any instruction, extracurricular activities, or training provided by the school is being conducted at the time a criminal offense is committed.

{¶91} "(R) "School premises" means either of the following:

{¶92} "(1) The parcel of real property on which any school is situated, whether or not any instruction, extracurricular activities, or training provided by the school is being conducted on the premises at the time a criminal offense is committed;

{¶93} "(2) Any other parcel of real property that is owned or leased by a board of education of a school, the governing authority of a community school established under Chapter 3314. of the Revised Code, or the governing body of a nonpublic school for which the state board of education prescribes minimum standards under section 3301.07 of the Revised Code and on which some of the instruction, extracurricular activities, or training of the school is conducted, whether or not any instruction,

extracurricular activities, or training provided by the school is being conducted on the parcel of real property at the time a criminal offense is committed.

**{¶94}** "(S) "School building" means any building in which any of the instruction, extracurricular activities, or training provided by a school is conducted, whether or not any instruction, extracurricular activities, or training provided by the school is being conducted in the school building at the time a criminal offense is committed."

**{¶95}** Here, the trial court instructed the jury as to the full definition of "school" as set forth in R.C. §2925.01(Q) and further provided the definition of "school premises" contained in R.C. 2925.01(R)(1). The trial court refused to provide the definition contained in R.C. 2925.01(R)(2) or the definition of "school building" contained in R.C. 2925.01(S).

**{¶96}** Upon review, we find that evidence presented established that Appellant's residence was located 961 feet from St. Mary's school, and that St. Mary's school had been in existence at that location for the last 30 to 50 years. (T. at 153-156).

**{¶97}** Jury instructions should be tailored to fit the facts of the case. *State v. Mullins,* Montgomery App. No. 22301, 2008–Ohio–2892, ¶ 9. We find that is what the trial court did in this case. Under the circumstances of the case at bar, there is nothing in the record to show Appellant was prejudiced by the instructions as presented to the jury in this case.

{¶98}  Appellant's Fourth Assignment of Error is overruled.

{¶99}  Accordingly the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed.

By: Wise, J.

Gwin, P. J., and

Baldwin, J., concur.

JWW/d 0312